**Robert RICHARDSON, II Defendant–Appellant,**

v.

**STATE of Indiana, Plaintiff–Appellee.**

**No. 67S01–9910–CR–506.**

Supreme Court of Indiana.

Oct. 1, 1999.

---

Susan K. Carpenter, Public Defender of
Indiana, Gregory L. Lewis, Deputy Public
Defender Indianapolis, Indiana, Attorneys
for Appellant.

Jeffrey A. Modisett, Attorney General of
Indiana, Geoff Davis, Deputy Attorney
General, Indianapolis, Indiana, Attorneys
for Appellee.

## ON PETITION TO TRANSFER

DICKSON, J.

With today's decision, we address the
application of the Indiana Double Jeopardy
Clause, Article I, Section 14 of the Indiana
Constitution, as distinct from its federal
counterpart in the Fifth Amendment to the
United States Constitution.

The defendant-appellant, Robert Richardson, II, was convicted of robbery as a
class C felony[1] and battery as a class A
misdemeanor.[2] The defendant was sentenced to eight years imprisonment for the
robbery and one year for the battery. The
sentences were to run consecutively for a
total of nine years imprisonment. On appeal, he contends that the convictions violate the Double Jeopardy Clause of the

Indiana Constitution. The Court of Appeals affirmed the convictions. *Richardson v. State*, 687 N.E.2d 241 (Ind.Ct.App.
1997). We grant transfer.

Prohibitions against double jeopardy protect the integrity of jury acquittals and the finality interest of defendants,
shield against excessive and oppressive
prosecutions, and ensure that defendants
will not undergo the anxiety and expense
of repeated prosecution and the increased
probability of conviction upon reprosecution.[3] Robert Matz, Note, *Dual Sovereignty and the Double Jeopardy Clause:
If at First You Don't Convict, Try, Try
Again*, 24 FORDHAM URB. L.J. 353, 356–57
(1997) (citations omitted). While double
jeopardy provisions are found in both the
U.S. Constitution and the Indiana Constitution, the defendant in this case does not
allege any violation of the federal Double
Jeopardy Clause.[4] Rather, he claims the
protection of the Indiana Double Jeopardy
Clause.

The analysis and application of double
jeopardy provisions have proven to be a
significant judicial challenge. Commentators note that double jeopardy provisions,
which appear straightforward and simple,
are often extremely difficult to apply and
the underlying jurisprudence enormously
challenging and complex.[5] Recently, in a

1. IND.CODE § 35–42–5–1.

2. IND.CODE § 35–42–2–1.

3. Prohibitions against double jeopardy protect against: (1) reprosecution for an offense after a defendant has already been convicted of the same offense in a previous prosecution (*North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Trittipo v. State*, 13 Ind. 360 (1859)); (2) reprosecution of a defendant after an acquittal (*Pearce; State v. Davis*, 4 Blackf. 345 (Ind.1837)); (3) multiple punishments for the same offense in a single trial (*Pearce; Kokenes v. State*, 213 Ind. 476, 13 N.E.2d 524 (1938)); (4) reprosecution of a defendant after the conviction has been reversed for insufficient evidence (*Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)); (5) criminal reprosecution of a defendant in limited circumstances fol-

lowing a previous civil prosecution (*Dep't of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994)); (6) reprosecution of a defendant in limited circumstances after a mistrial has been declared (*Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); *State v. Leunig*, 42 Ind. 541 (1873)).

4. The federal Double Jeopardy Clause provides in part: "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V.

5. *See, e.g., Albernaz v. United States*, 450 U.S. 333, 343, 101 S.Ct. 1137, 1144, 67 L.Ed.2d 275, 284 (1981) ("[T]he decisional law in the [double jeopardy] area is a veritable Sargasso Sea which could not fail to challenge the most

series of decisions, this Court acknowledged that some of our decisions during the past twenty years misapplied federal double jeopardy jurisprudence. *See Grinstead v. State*, 684 N.E.2d 482 (Ind.1997); *Games v. State*, 684 N.E.2d 466 (Ind.1997), *modified on other grounds*, 690 N.E.2d 211 (Ind.1997). We did not, however, address whether the Double Jeopardy Clause of the Indiana Constitution provides identical or different protections than its federal counterpart.[6] Today, with our opinions in this case and its companion cases, we address this issue.

### The Double Jeopardy Clause of the Indiana Constitution

■ Questions arising under the Indiana Constitution are to be resolved by "examining the language of the text in the context of the history surrounding its drafting and ratification, the purpose and structure of our constitution, and case law interpreting the specific provisions." *Indiana Gaming Comm'n v. Moseley*, 643 N.E.2d 296, 298 (Ind.1994). In construing the Constitution, "'a court should look to the history of the times, and examine the state of things existing when the constitution or any part thereof was framed and adopted, to ascertain the old law, the mischief, and the remedy.'" *Bayh v. Sonnenburg*, 573 N.E.2d 398, 412 (Ind.1991) (quot-

intrepid judicial navigator."); *United States v. Larkin*, 605 F.2d 1360, 1361 (5th Cir.1979) ("This case involving the arcane principles of double jeopardy and collateral estoppel is not susceptible of bright-letter law or black-letter law; the areas are most often gray, and dimly to be seen. Needless to say, one entering this field must do so with trepidation."); Akhil Reed Amar, *Double Jeopardy Law Made Simple*, 106 YALE L.J. 1807, 1807 (1997) ("Modern Supreme Court case law is full of double jeopardy double talk."); Eli J. Richardson, *Eliminating Double–Talk from the Law of Double Jeopardy*, 22 FLA. ST. U.L.REV. 119, 119 (1994) ("A great deal of confusion, however, underlies this renowned, appealing, and seemingly self-explanatory constitutional guarantee.").

6. *See Grinstead*, 684 N.E.2d at 485–86; *Games*, 684 N.E.2d at 473 n. 7. *See also Valentin v. State*, 688 N.E.2d 412, 413 (Ind. 1997) (saving this issue "for another day").

ing *State v. Gibson*, 36 Ind. 389, 391 (1871)). Because the "intent of the framers of the Constitution is paramount in determining the meaning of a provision," *Eakin v. State ex rel. Capital Improvement Bd. of Managers*, 474 N.E.2d 62, 64 (Ind.1985), this Court will consider "the purpose which induced the adoption," *id.* at 65, "in order that we may ascertain what the particular constitutional provision was designed to prevent," *Northern Ind. Bank & Trust Co. v. State Bd. of Fin.*, 457 N.E.2d 527, 529 (Ind.1983).

When this State was founded in 1816, the framers and ratifiers adopted a double jeopardy provision which provided that, "in all criminal prosecutions, the accused ... shall not · ... be twice put in jeopardy for the same offence." IND. CONST. art 1, § 13 (1816). However, our ability to discern the framers' intentions is limited because the journal of the 1816 Constitutional Convention does not report the delegates' remarks or disclose procedural matters informative to the issue.[7]

■ When the present version of our Constitution was adopted in 1851, the original double jeopardy provision was only slightly modified. Article I, Section 14 provides in part: "No person shall be put in jeopardy twice for the same offense."[8]

Footnote 7 in *Games* included the following unfortunate sentence: "However, the defendant does not provide Indiana authority, and we find none from this Court, establishing an independent state double jeopardy protection based upon an analysis of the Indiana Constitution." 684 N.E.2d at 473 n. 7. As discussed below and in the separate opinion of Justice Boehm, the early cases of this Court extensively discuss the application of the Indiana Double Jeopardy Clause. Footnote 7 of *Games* should not be read for the proposition that there is no independent double jeopardy protection under the Indiana Constitution.

7. *See* JOURNAL OF THE CONVENTION OF THE INDIANA TERRITORY, *reprinted in* 61 IND. MAG. OF HIST. 89–155 (1965).

8. Discussing our state Double Jeopardy Clause, this Court in *Gillespie v. State*, 168 Ind. 298, 80 N.E. 829 (1907), noted that a

The provision was adopted with no debate and has not been modified to date. The "'cardinal principle of constitutional construction [is] that words are to be considered as used in their ordinary sense.'" *Ajabu v. State*, 693 N.E.2d 921, 929 (Ind. 1998) (quoting *Tucker v. State*, 218 Ind. 614, 670, 35 N.E.2d 270, 291 (1941)). Contemporaneous with the adoption of the 1851 Constitution, "offense" was defined as a "crime" or "transgression of law." Noah Webster, An American Dictionary of the English Language 768 (1856). This definition of "offense," however, does not explain the meaning of "same offense," which has become a term of art. It is not surprising that, "[f]or decades, commentators and judges have attempted to define which offenses are the same, and the problem continues to be the focus of much of the contemporary scholarly criticism of double jeopardy doctrine." Nancy J. King, *Portioning Punishment: Constitutional Limits on Successive and Excessive Penalties*, 144 U. Pa. L.Rev. 101, 129 n. 81 (1995).

■ Despite the lack of discussion at the 1850–51 Convention regarding Indiana's Double Jeopardy Clause, this Court has recognized that the intent of the framers and ratifiers derived from English common law double jeopardy principles. *See State v. Elder*, 65 Ind. 282, 284 (1879) ("That no person shall be put in jeopardy twice for the same offence is a common-law principle, which, we believe, is incorporated into the constitution of each of the States which compose the United States."). With the understanding that the constitutional protection against double jeopardy is one of the "least understood" and "most frequently litigated provisions of the Bill of Rights," *Whalen v. United States*, 445 U.S. 684, 699, 100 S.Ct. 1432, 1442, 63 L.Ed.2d 715, 728–29 (1980) (Rehnquist, J., dissenting), "[i]t has always been an accepted judicial technique to have resort to the common law in order to ascertain the true meaning of the double jeopardy clause," Jay A. Sigler, *A History of Double Jeopardy*, 7 Am. J. Legal Hist. 283, 283 (1963) (hereinafter Sigler, *History*). Thus, understanding our Double Jeopardy Clause requires that we go beyond its text. The common law is helpful in determining the framers' understanding of the term "same offense.".

Scholars trace double jeopardy principles back to ancient Greek,[9] Roman,[10] and

"provision in a former constitution of a state, which has been interpreted or construed by the highest court thereof, and thereafter is readopted and incorporated into a new or later constitution ... was intended by the framers and ratifiers of the new or later constitution that the provision should have and be accorded the same interpretation or construction which was placed upon it by the highest court prior to its readoption." *Id.* at 310–11, 80 N.E. at 833. Unfortunately, only five reported decisions between 1817 and 1850 involved double jeopardy, and none addressed the situation in the case at bar. *See State v. Johnson*, 8 Blackf. 533 (Ind.1847); *Weinzorpflin v. State*, 7 Blackf. 186 (Ind. 1844); *Davis v. State*, 6 Blackf. 494 (Ind. 1843); *State v. Mead*, 4 Blackf. 309 (Ind. 1837); *State v. Davis*, 4 Blackf. 345 (Ind. 1837).

9. Demosthenes, Athenian statesman who lived in fourth century B.C. Greece, wrote: "Now the laws forbid the same man to be tried twice on the same issue, be it a civil action, a scrutiny, a contested claim, or any-

thing else of the sort." 1 Demosthenes 589 (J. Vince trans. 1962).

10. The Digest of Justinian pronounced that "[t]he governor should not permit the same person to be again accused of a crime of which he has been acquitted." Dig. Just 48.2.7, *reprinted in*, 11 Corpus Juris Civilis 17 (A. Scott trans. 1973). Paulus, a leading Roman jurist, in explaining the duties of the proconsul, recorded that "[t]he Senate decreed that no one can be accused of the same crime under several laws." Dig. Just. 48.2.14, *reprinted in*, 11 Corpus Juris Civilis 20. The maxim "*Nemo debet bis punire pro uno delicto*" originates in Roman law in 289 A.D. and declares that "[a]nyone who has been charged with a public crime, cannot again be accused of the same crime by another person. If, however, several offences arise from the same act, and complaint is only made of one of them, it is not forbidden for an accusation of another to be filed by some other individual." Statement of the Same Emperors to Honoratus (Sept. 289), *in* 14 S.P. Scott, The Civil Law 360 (1932) (from Book IX of the

biblical [11] sources. While some historians trace double jeopardy protections in England to the dispute between King Henry II and Archbishop Thomas à Becket in 1176,[12] the earliest treatise on the English common law, published in the late twelfth century, did not directly mention double jeopardy protections. Sigler, *History, supra*, at 291 (referring to RANULF DE GLANVILLE, A TREATISE ON THE LAWS AND CUSTOMS OF THE KINGDOM OF ENGLAND COMPOSED IN THE TIME OF KING HENRY THE SECOND). In the English case reporters between 1290 and 1535, "the word 'jeopardy' occurs only eleven times in reports involving criminal cases, and in only three of these instances was it used in the statement that a man's life shall not be twice 'put in jeopardy' for the same offense." Marion S. Kirk, *"Jeopardy" During the Period of the Year Books*, 82 U. PA. L.REV. 602, 604–05 (1934) (footnotes omitted).

During the 1600s and 1700s, double jeopardy protections were further examined by Lord Edward Coke and William Blackstone.[13] Lord Coke only found double jeopardy protections in the three pleas of *autrefois acquit* (former acquittal), *autrefois convict* (former conviction), and former pardon. Sigler, *History, supra*, at 296. By the late 1700s, a fourth plea of *autrefois attaint* [14] was also recognized. *Id.* Writing 100 years after Coke, Black-

stone began using the phrase "jeopardy" more often, noting that "the plea of *autrefois acquit*, or a former acquittal, is grounded on this universal maxim of the common law of England that no man is to be brought into jeopardy of his life, more than once, for the same offence." 4 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND *329 (1769).

As a further indicator of the framers' understanding of the common law of double jeopardy, we note that the early American colonies departed in some respects from English common law, recognizing broader double jeopardy protections. For example, the bar against double jeopardy for Lord Coke depended on the reasons for the prior acquittal,[15] whereas early American double jeopardy law barred retrial for *any* prior acquittal. Blackstone described double jeopardy protections as applying only to criminal *felony* prosecutions, whereas early American double jeopardy protections applied to *all* criminal prosecutions. Under English common law, jeopardy did not attach until a verdict or acquittal was actually rendered, thus allowing retrials following hung juries or mistrials, whereas early American double jeopardy law barred reprosecution in certain hung jury or mistrial circumstances. Further, early English double jeopardy protections were developed in the context

Code of Justinian). The editor notes that "[t]his salutary and equitable rule is undoubtedly the original source whence is derived the provision of our organic law prohibiting any person 'for the same offence to be twice put in jeopardy of life or limb,' as set forth in [Amendment] V of the Constitution." *Id.* at 360 n. 1.

11. In 391 A.D., Saint Jerome interpreted a verse from the Old Testament, which reads in part that "he will not take vengeance twice on his foes," *Nahum* 1:9 (R.S.V.), as establishing the principle that "God judges not twice for the same offence." MARTIN L. FRIEDLAND, DOUBLE JEOPARDY 5 (1969).

12. *See Id.*

13. "The most important individuals in the history of double jeopardy are undoubtedly Coke and Blackstone. These two writers clar-

ified the concept and first gave it the importance which it subsequently attained in the United States." Sigler, *History, supra*, at 294.

14. *Autrefois attaint* is the "[f]ormer forfeiture of property to the government." Gary DiBianco, Note, *Truly Constitutional? The American Double Jeopardy Clause and Its Australian Analogues*, 33 AM.CRIM. L.REV. 123, 126 n. 22 (1995).

15. For example, an acquittal based upon self-defense was a bar to all future prosecutions, but acquittals on other grounds would not bar future prosecutions. *See* JAY A. SIGLER, DOUBLE JEOPARDY: THE DEVELOPMENT OF A SOCIAL AND LEGAL POLICY 18 (1969) (citing EDWARD COKE, THE THIRD PART OF THE INSTITUTES OF THE LAWS OF ENGLAND 213 (4th ed. 1669)).

of criminal law practice and procedure different from that which existed and continues to exist in this country. When Coke formulated the double jeopardy prohibition against second prosecutions for the same offense, there did not exist the same number of closely related offenses as we have today. As one commentator has noted, "the law distinguished among rape, arson, and murder, but not between 'intimidating any person from voting' and 'interfering with his right to vote.'" Larry Simon, Note, *Twice in Jeopardy*, 75 YALE L.J. 262, 279 (1965).[16] "At the time of Henry III there were only eleven felonies. In Coke's time the number had risen to thirty." *Id.* at 279 n. 75. By the time the U.S. Constitution was ratified, England had 160 different felonies. *Id.*

Also, early American colonies and states embodied double jeopardy principles in statutory and organic laws, unlike England. In 1641, the Bay Colony of Massachusetts drafted the Body of Liberties, which led to the adoption of the Massachusetts Code of 1648. "The fact that the Bay Colony reduced double jeopardy protection to a written form and expanded it beyond the common law guarantee demonstrates that the colonists regarded the concept to be fundamental." Charles L. Cantrall, *Double Jeopardy and Multiple Punishment: An Historical and Constitutional Analysis*, 24 S. TEX. L.J. 735, 765 (1983).[17] Although New Hampshire was the first (and only) state to include double jeopardy protections in its state constitution *prior* to the ratification of the U.S. Constitution,[18] *id.* at 766, almost every state has now included some type of protection against double jeopardy in its state constitution, Sigler, *History, supra,* at 307–08; Simon, *supra,* at 262.

As states developed and applied their respective double jeopardy principles, two divergent analyses appeared for determining whether the offenses are the same: (1) the behavioral approach; and (2) the evidentiary approach. *Id.* at 269–70. The "behavioral approach focuses on the defendant's conduct rather than on the prosecutor's evidence. Courts which use this approach adopt an act, transaction, or intent test." *Id.* at 270 (emphasis omitted). This behavioral approach (also referred to as the same transaction or same conduct approach) was explicitly rejected early by the Indiana Supreme Court in *State v. Elder*, 65 Ind. 282 (1879).[19] The *Elder* Court noted that two lines of Double Jeopardy

16. This commentary has been accorded significant regard. *See* Susan R. Klein, *Civil In Rem Forfeiture and Double Jeopardy*, 82 IOWA L.REV. 183, 242 n. 242 (1996) (noting that this commentary "remains the seminal article in this area"). In his treatise on criminal procedure, Joshua Dressler notes, "The Supreme Court's 'favorite saying' about the double jeopardy clause"—that double jeopardy consists of three protections against successive prosecution after acquittal, successive prosecution after conviction, and multiple punishment—was "adopted from [this] law review article." JOSHUA DRESSLER, UNDERSTANDING CRIMINAL PROCEDURE 431 (1991) (citing Peter Westen, *The Three Faces of Double Jeopardy: Reflecting on Government Appeals of Criminal Sentences*, 78 MICH. L.REV. 1001, 1062 (1980)).

17. Section 42 stated: "No man shall be twice sentenced by Civil Justice for one and the same Crime, offence, or Trespasse." Cantrall, *supra,* at 764 n. 132 (citing *Massachusetts Body of Liberties, 1641: A Copie of the Liberties of the Massachusetts Colonie in New England, reprinted in* 1 BERNARD SCHWARTZ, THE BILL OF RIGHTS, A DOCUMENTARY HISTORY 76 (1971)).

18. "No subject shall be liable to be tried, after an acquittal, for the same crime or offense." N.H. CONST. pt. 1, art. XVI.

19. This rejection of the same transaction/conduct test in Indiana has been recognized consistently since 1879. *See Ford v. State*, 229 Ind. 516, 520–21, 98 N.E.2d 655, 657 (1951) ("If appellant is claiming that the 'same transaction' test should be applied, that test was expressly repudiated in [Indiana case law].") (citing *Elder*); *Foran v. State*, 195 Ind. 55, 60, 144 N.E. 529, 530 (1924) (noting that the defendant was arguing "that the offenses charged . . . grew out of the same transaction; and [he] quotes the test applied in some jurisdictions . . . known as 'the same transaction test.' This test has been expressly repudiated in this state."). However, we note that, in one isolated case prior to 1879, the Court employed without discussion what seems to be a behavioral test to find double jeopardy

Clause interpretation appeared throughout the nation. One line held that state double jeopardy clauses provide "a more liberal rule ... in favor of the accused." *Id.* at 284. This more liberal rule was the same transaction/conduct test, which prohibited multiple prosecutions arising out of the "same state of facts, although they may include several offences." *Id.* at 285. Under the other line of interpretation, the evidentiary approach, state double jeopardy clauses "mean no more than the common-law principle." *Id.* at 284. After reviewing Indiana court decisions and the decisions from other state and federal courts, the *Elder* Court rejected the more liberal test, stating that it could "not adopt the rule held in some States, that the accused can not, in any case, be convicted but once upon the same facts when they constitute different offences...." *Id.* at 286–87.

The evidentiary approach (also referred to as the same evidence test) is apparent

in the English common law case of *The King v. Vandercomb & Abbot,* 2 Leach 708, 168 Eng. 455 (1796). That court explained the test as follows: "if crimes are so distinct that evidence of the one will not support the other, it is as inconsistent with reason, as it is repugnant to the rules of law, to say that they are so far the same that an acquittal of the one shall be a bar to a prosecution for the other." *Id.* at 717, 168 Eng. at 460.[20] However, American jurisprudence in the last two centuries provides no single, generally accepted articulation of the same evidence test. Rather, the test has assumed three separate formulations: a "required evidence test," [21] an "alleged evidence test," [22] and an "actual evidence test." [23] Simon, *supra,* at 269–270. *See also Haynes v. State,* 249 Ga. 119, 288 S.E.2d 185, 188–90 (1989) (discussing these three tests in extensive detail).

In discerning the approach required by the Indiana Constitution, we first note that

violated by the two convictions for the murders of two different persons because "the killing of two or more persons by the same act constitutes but one crime...." *Clem v. State,* 42 Ind. 420, 427 (1873). *Clem* based its decision on *State v. Damon,* 2 Tyl. 387 (Vt. 1803), in which the Vermont Supreme Court held that, when the defendant had " 'wounded two persons in the same affray, at the same instant of time, and with the same stroke,' " *Clem,* 42 Ind. at 429 (quoting *Damon,* 2 Tyl. at 390), it was the same offense, and the defendant could not be held to answer again for the same offense, *Clem,* 42 Ind. at 430 (citing *Damon,* 2 Tyl. at 390–91). In a later decision, this Court reviewed the *Clem* decision and found that it applied to circumstances in which there was but one *single* act:

> In *Clem* [ ], it is held that, if a person assaults and kills two persons with a single shot, or with a single blow of an instrument, so that the injury to both results from one indivisible act, it is one offense against the State, and a conviction of having murdered one will bar a prosecution for the murder of the other.

*Hughes v. State,* 212 Ind. 577, 581, 10 N.E.2d 629, 631 (1937).

**20.** The first court in this country to apply the *Vandercomb* same evidence approach was the Massachusetts Supreme Judicial Court in

*Commonwealth v. Roby,* 29 Mass. (12 Pick.) 496, 503 (1832). Soon thereafter, that court restricted the test, holding that "[a] conviction or acquittal upon one indictment is no bar to a subsequent conviction and sentence upon another, unless the evidence *required* to support a conviction upon one of them would have been sufficient to warrant a conviction upon the other." *Morey v. Commonwealth,* 108 Mass. 433, 434 (1871). Present federal jurisprudence is based upon *Morey,* which had stated, "A single act may be an offense against two *statutes* ... if each *statute* requires proof of an additional fact which the other does not...." *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932) (quoting *Morey,* 108 Mass. at 434) (emphasis added).

**21.** The required evidence test determines whether the offenses are the same based on an analysis of the statute. Simon, *supra,* at 269.

**22.** The alleged evidence test "finds offenses the same if there is sufficient similarity between the allegations of the two indictments." *Id.*

**23.** The actual evidence test assesses whether the offenses are the same based on "the evidence presented at the two trials." *Id.* at 270.

"[e]arly decisions of this Court interpreting our Constitution ... have been accorded strong and superseding precedential value." *Collins v. Day*, 644 N.E.2d 72, 76 (Ind.1994).[24] In seeking the proper interpretation of our Double Jeopardy Clause, we draw from cases involving subsequent prosecutions because double jeopardy claims in multiple punishments cases did not emerge until after 1930,[25] and because this Court has not distinguished between double jeopardy protections in multiple punishment cases and those in subsequent prosecution cases. Our double jeopardy case law appears to fall into five different subsequent prosecution categories—those following a conviction;[26] a mistrial or the discharge of the jury or defendant;[27] a

24. The federal Double Jeopardy Clause did not apply to criminal prosecutions in state courts until 1969. Before this date, protection against double jeopardy existed only under state constitutions. In 1969, the U.S. Supreme Court applied its "selective incorporation" doctrine and determined that the federal Double Jeopardy Clause was thereafter applicable to and binding upon the states under the Due Process Clause of the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). As we recently noted in *Ajabu,* Indiana case law construing an Indiana constitutional provision prior to the date of such selective incorporation is of great significance "in determining whether the Indiana Constitution demands more than its federal counterpart." *Ajabu,* 693 N.E.2d at 929 (citing *Peterson v. State,* 674 N.E.2d 528, 533–34 (Ind. 1996); *Moran v. State,* 644 N.E.2d 536, 540 (Ind.1994)).

25. *Pivak v. State,* 202 Ind. 417, 175 N.E. 278 (1931); *Lawson v. State,* 202 Ind. 583, 177 N.E. 266 (1931); *Kokenes v. State,* 213 Ind. 476, 13 N.E.2d 524 (1938); *Carter v. State,* 229 Ind. 205, 96 N.E.2d 273 (1951); *Havener v. State,* 234 Ind. 148, 125 N.E.2d 25 (1955); *Woods v. State,* 234 Ind. 598, 130 N.E.2d 139 (1955); *Mims v. State,* 236 Ind. 439, 140 N.E.2d 878 (1957); *Tungate v. State,* 238 Ind. 48, 147 N.E.2d 232 (1958), *overruling recognized by Elmore v. State,* 176 Ind.App. 306, 375 N.E.2d 660 (1978); *Dunkle v. State,* 241 Ind. 548, 173 N.E.2d 657 (1961); *Dowd v. Todd,* 243 Ind. 232, 184 N.E.2d 4 (1962); *Sutton v. State,* 248 Ind. 1, 221 N.E.2d 430 (1966).

26. *Ambrose v. State,* 6 Ind. 351 (1855); *State v. Moore,* 6 Ind. 436 (1855); *Bruce v. State,* 9 Ind. 206 (1857); *Trittipo v. State,* 13 Ind. 360 (1859); *Wininger v. State,* 13 Ind. 540 (1859); *Jackson v. State,* 14 Ind. 327 (1860); *Fritz v. State,* 40 Ind. 18 (1872), *reasoning overruled in Woodworth v. State,* 185 Ind. 582, 114 N.E. 86 (1916); *Clem,* 42 Ind. 420; *Brinkman v. State,* 57 Ind. 76 (1877); *State v. Hattabough,* 66 Ind. 223 (1879); *Greenwood v. State,* 64 Ind. 250 (1878); *Bryant v. State,* 72 Ind. 400 (1880); *Jenkins v. State,* 78 Ind. 133 (1881); *Halloran v. State,* 80 Ind. 586 (1881); *Davidson v. State,* 99 Ind. 366 (1885); *Boswell v. State,* 111 Ind. 47, 11 N.E. 788 (1887); *Pehlman v. State,* 115 Ind. 131, 17 N.E. 270 (1888); *Freeman v. State,* 119 Ind. 501, 21 N.E. 1101 (1889); *Ledgerwood v. State,* 134 Ind. 81, 33 N.E. 631 (1893); *State v. Reed,* 168 Ind. 588, 81 N.E. 571 (1907); *Woodworth,* 185 Ind. 582, 114 N.E. 86; *Anderson v. State,* 187 Ind. 94, 118 N.E. 567 (1918); *Heier v. State,* 191 Ind. 410, 133 N.E. 200 (1921); *Cambron v. State,* 191 Ind. 431, 133 N.E. 498 (1922); *Thomas v. City of Indianapolis,* 195 Ind. 440, 145 N.E. 550 (1924); *Alyea v. State,* 198 Ind. 364, 152 N.E. 801, 153 N.E. 775 (1926); *Durke v. State,* 204 Ind. 370, 183 N.E. 97 (1932); *Arrol v. State,* 207 Ind. 321, 192 N.E. 440 (1934); *Hanks v. State,* 225 Ind. 593, 76 N.E.2d 702 (1948); *Ford,* 229 Ind. 516, 98 N.E.2d 655, *cert. denied,* 342 U.S. 873, 72 S.Ct. 116, 96 L.Ed. 656; *Gullett v. State,* 233 Ind. 6, 116 N.E.2d 234 (1953).

27. *Davis v. State,* 6 Blackf. 494 (Ind.1843); *Weinzorpflin v. State,* 7 Blackf. 186 (Ind. 1844); *Wright v. State,* 5 Ind. 290 (1854); *Wright v. State,* 5 Ind. 527 (1854); *Miller v. State,* 8 Ind. 325 (1856), *overruled in part by State v. Walker,* 26 Ind. 346 (1866); *Morgan v. State,* 13 Ind. 215 (1859); *State v. Wamire,* 16 Ind. 357 (1861); *State ex rel. Sumpter v. Barbour,* 17 Ind. 526 (1861); *Rulo v. State,* 19 Ind. 298 (1862); *Walker,* 26 Ind. 346; *State v. Nelson,* 26 Ind. 366 (1866); *Shaffer v. State,* 27 Ind. 131 (1866); *Bescher v. State,* 32 Ind. 480 (1870); *State v. Leunig,* 42 Ind. 541 (1873); *Kingen v. State,* 46 Ind. 132 (1874); *Weaver v. State,* 83 Ind. 289 (1882); *Maden v. Emmons,* 83 Ind. 331 (1882), *overruled in part by Gillespie v. Rump,* 163 Ind. 457, 72 N.E. 138 (1904); *Fowler v. State,* 85 Ind. 538 (1882); *Doles v. State,* 97 Ind. 555 (1884); *Adams v. State,* 99 Ind. 244 (1884); *Hensley v. State,* 107 Ind. 587, 8 N.E. 692 (1886); *State v. Leach,* 120 Ind. 124, 22 N.E. 111 (1889); *Gillespie,* 168 Ind. 298, 80 N.E. 829; *Blocher v. State,* 177 Ind. 356, 98 N.E. 118 (1912); *Harlan v. State,* 190 Ind. 322, 130 N.E. 413 (1921); *Mood v. State,* 194 Ind. 357, 142 N.E. 641 (1924); *Mann v. State,* 205 Ind. 491, 186 N.E. 283, 187 N.E. 343 (1933); *Foreman v. State,* 214 Ind. 79, 14 N.E.2d 546 (1938);

successful appeal;[28] an acquittal;[29] and a civil action.[30]

Our earliest jurisprudence demonstrates that this Court did not limit itself to any single formulation of the evidence test, such as an "actual evidence test," a "required evidence test," or an "alleged evidence test," in determining whether the offenses were the same. In the cases most contemporaneous (1859 to 1884) with the adoption of the 1851 Constitution, this Court did not identify a singular test or restrict the double jeopardy inquiry to the statutory elements or charging instruments, but instead considered all of the circumstances and evidence available to the reviewing court to determine whether the offenses were the same.

After the ratification of our Constitution in 1851, the Indiana Supreme Court considered whether the convictions were the "same offense" in *Wininger v. State*, 13 Ind. 540 (1859). In *Wininger*, the defendant was first convicted of assault and battery and then tried for the crime of riot, each arising out of the same event.

Noting "conflict in the decisions of some of the sister states," the *Wininger* Court considered whether double jeopardy was violated, holding that "the true rule, in prosecutions for offenses of this character, is, that where the gravamen of the riot consists in the commission of an assault and battery, then, a conviction for that assault, & c., would be a bar to a prosecution for a riot...." *Id.* at 541. However, "where the commission of an assault and battery was merely incidental to the riot, then a conviction for the one would not bar a prosecution for the other...." *Id.* Thus, "[t]he question would be, is the one act included in the other?"[31] *Id.* Looking to the evidence introduced at trial, the Court reversed the second conviction, finding that the Double Jeopardy Clause was violated because "the gravamen of the riot was the assault and battery." *Id.*

In *Brinkman v. State*, 57 Ind. 76 (1877), the defendant was indicted twice for selling alcohol to a minor on the same day. He was tried and convicted on the first

---

*Armentrout v. State*, 214 Ind. 273, 15 N.E.2d 363 (1938); *Holt v. State*, 223 Ind. 217, 59 N.E.2d 563 (1945); *State v. Soucie*, 234 Ind. 98, 123 N.E.2d 888 (1955); *State v. Taylor*, 235 Ind. 632, 137 N.E.2d 537 (1956); *Johnson v. State*, 252 Ind. 79, 246 N.E.2d 181 (1969); *Majors v. State*, 252 Ind. 672, 251 N.E.2d 571 (1969).

**28.** *Joy v. State*, 14 Ind. 139 (1860); *Fritz*, 40 Ind. 18; *Ex parte Bradley*, 48 Ind. 548 (1874); *Mills v. State*, 52 Ind. 187 (1875); *State v. Balsley*, 159 Ind. 395, 65 N.E. 185 (1902); *State. ex rel. Lopez v. Killigrew*, 202 Ind. 397, 174 N.E. 808 (1931); *Jacoby v. State*, 210 Ind. 49, 199 N.E. 563 (1936); *McDowell v. State*, 225 Ind. 495, 76 N.E.2d 249 (1947); *Slack v. Grigsby*, 229 Ind. 335, 97 N.E.2d 145 (1951), *criticized in State v. Gurecki*, 233 Ind. 383, 119 N.E.2d 895 (1954); *Todd v. State*, 229 Ind. 664, 101 N.E.2d 45 (1951), *criticized in Gurecki*, 233 Ind. 383, 119 N.E.2d 895; *Gurecki*, 233 Ind. 383, 119 N.E.2d 895; *Cichos v. State*, 246 Ind. 680, 208 N.E.2d 685, 210 N.E.2d 363 (1965); *Layton v. State*, 251 Ind. 205, 240 N.E.2d 489 (1968).

**29.** *State v. Mead*, 4 Blackf. 309 (Ind.1837); *State v. Davis*, 4 Blackf. 345 (Ind.1837); *State v. Johnson*, 8 Blackf. 533 (Ind.1847); *State v.*

*Warner*, 14 Ind. 572 (1860); *State v. Elder*, 65 Ind. 282 (1879); *Burk v. State*, 81 Ind. 128 (1881); *Smith v. State*, 85 Ind. 553 (1882); *Brackney v. State*, 182 Ind. 343, 106 N.E. 532 (1914); *Barker v. State*, 188 Ind. 263, 120 N.E. 593 (1918); *Foran*, 195 Ind. 55, 144 N.E. 529.

**30.** *State ex rel. Scobey v. Stevens*, 103 Ind. 55, 2 N.E. 214 (1885); *Burgh v. State ex rel. McCormick*, 108 Ind. 132, 9 N.E. 75 (1886); *State ex rel. Beedle v. Schoonover*, 135 Ind. 526, 35 N.E. 119 (1893); *State ex rel. Duensing v. Roby*, 142 Ind. 168, 41 N.E. 145 (1895).

**31.** The Court provided the following illustration of a similar scenario which would not violate the Double Jeopardy Clause:

> [W]here several [persons] should riotously attempt to tear down a house, and, in that attempt, the owner of the house, in the defense thereof, should be assaulted, ... the purposed and main offense would be, the demolition of the house, but at the same time the parties might, in the perpetration of that offense, commit other unlawful acts for which a prosecution could be maintained, as well as for the riot.

> *Id.*

indictment, and then tried and convicted on the second indictment. Addressing the defendant's double jeopardy claim, the Court looked to the testimony introduced at the first trial which established that the defendant had sold alcohol twice to the minor, once in the morning and once in the afternoon. Again, without reciting any particular test, the Court looked to the testimony introduced at the second trial and found that it, too, established that the defendant had sold alcohol twice to the same minor, once in the morning and once in the afternoon. However, the Court noted that nothing in the record of either the first or second trial identified whether the convictions were for the morning sale or the afternoon sale, and that the indictments merely gave the date but did not differentiate between the time of day the crimes occurred. The Court found that a new trial was required because, "by the mode, adopted by the prosecution, of giving evidence as to both sales on each indictment, both convictions may have been secured for the same selling." *Id.* at 79. The Court found this problematic because the jury in the first trial, "having the evidence as to both alleged sales before them, [could have] found that [the morning sale] was not satisfactorily established, but that the [afternoon sale] was...." *Id.* Then, in the second trial:

> the evidence as to both alleged sales was given, and the court was satisfied that [the morning sale], regarded as not proved by the jury [in the first trial], was not proved [in the second trial], but that the [afternoon sale] was, and convicted the defendant [of the afternoon sale]; the conviction would be justified by the evidence for the State, and the defendant be twice convicted for the same offence [the afternoon sale].

*Id.*

In *Greenwood v. State*, 64 Ind. 250 (1878), the defendant challenged his conviction for a second assault and battery because he had already been convicted of assault and battery upon a different victim arising out of the same fight. The defendant argued that, regardless of "how many soever of assaults and batteries he may have committed during the period of excitement at the ball, they all amounted in law to but one offence...." *Id.* at 253. Without reciting a particular "test," the Court looked to the testimony introduced at the first trial and, emphasizing the evidence presented, found that the defendant committed two separate assaults and batteries against two different victims arising from the same fight. *Id.* at 253–54. Thus, no double jeopardy violation occurred.

In *State v. Elder*, 65 Ind. 282 (1879), the defendant was indicted for three counts of attempting to produce a miscarriage upon Elizabeth Bradburn by: (1) inserting an instrument into her uterus; (2) using the hand of another; and (3) administering a large quantity of medicine. Before the case went to trial, the defendant filed an answer asserting double jeopardy as an affirmative bar, arguing that he had previously been acquitted in a prosecution charging the murder of "a certain child, unnamed, of one Elizabeth Bradburn, by ... inserting [an] instrument into the uterus of the said Elizabeth Bradburn, and passing it about the fetus, thereby causing the miscarriage of the said Elizabeth Bradburn, and the death of said child." *Id.* at 283–84. The trial court found for the defendant and dismissed the second indictment. Writing for a unanimous Court, Judge Biddle [32] reversed, articulating the test as follows: if the facts show two or more offenses, but "the lesser offence is not necessarily involved in the greater, and when the facts necessary to convict on a second prosecution would not

---

**32.** Judge Horace P. Biddle was also one of delegates to the 1851 Constitutional Convention which adopted our state Double Jeopardy Clause. JOURNAL OF THE CONVENTION OF THE PEOPLE OF THE STATE OF INDIANA TO AMEND THE CONSTITUTION 3 (1851). Judge Biddle also joined the aforementioned opinions in *Greenwood v. State*, 64 Ind. 250 (1878), and *Brinkman v. State*, 57 Ind. 76 (1877).

necessarily have convicted on the first," double jeopardy will not prevent two convictions, even though "the offences were both committed at the same time and by the same act." *Id.* at 285. In finding that the defendant was not being twice prosecuted for the same offense, the Court noted:

> An indictment for the murder of the unnamed child of Elizabeth Bradburn is by no means the same as an indictment charging the employment of certain means, with the intent to procure the miscarriage of Elizabeth Bradburn, although the same means were used to commit the offence in both cases. The lesser offence is not involved in the greater; the offences are not committed against the same person, and bear no resemblance to each other, either in fact or intent; the facts necessary to support a conviction on the [miscarriage charge] would not necessarily have convicted, nor would they even have tended to convict, upon the [murder charge].

*Id.* at 286. The Court concluded, "We can not adopt the rule held in some States, that the accused can not, in any case, be convicted but once upon the same facts when they constitute different offences...." *Id.* at 286–287.

The defendant in *Jenkins v. State*, 78 Ind. 133 (1881), was tried and convicted of assault and battery. He was also tried and convicted in a second trial for assault and battery, despite his claim of double jeopardy. The Court reversed the second conviction, noting that "[i]t is always necessary for one who [claims double jeopardy] to show that the offence for which he was convicted is the same as that involved in the prosecution in which the evidence is offered." *Id.* at 134. Without reciting any particular test, it held that "[t]he evidence fairly shows that the offence for which the appellant was convicted [at the first trial] is the same as that described in the indictment in the case at bar." *Id.* See also *Foran v. State*, 195 Ind. 55, 61, 144 N.E. 529, 531 (1924) ("The offenses charged must not only be the same in law, as would be shown by the instruments which charged the offenses, but that such offenses must be the same in fact.").

Beginning in *Davidson v. State*, 99 Ind. 366 (1885), however, this Court, without expressly overruling precedent or noting a change in jurisprudence, shifted its consideration away from the available evidence to the statutory requirements.[33] In his first trial, the defendant was convicted of unlawfully carrying a deadly weapon. In a subsequent prosecution, he was convicted of threatening to use a pistol during the same transaction. The Court found these convictions did not violate double jeopardy, even though the "two prosecutions grew out of, and were based upon, the same transaction." *Id.* at 367. The Court stated that the test is whether the charged crimes "are so far distinct that the evidence which would sustain one would not sustain the other." *Id.* at 368. The charged crimes were (1) unlawfully carrying a deadly weapon, and (2) threatening to use a pistol. The Court looked to the statutory elements and held that "a material difference [existed] between the two offences defined by section 1984 [drawing or threatening to use a weapon], and those declared by section 1985 [carrying a concealed weapon or carrying a weapon openly with intent to injure someone], even conceding that the same pistol is used in every instance." *Id.* at 367.

---

**33.** Defendant Richardson refers to cases after 1884 that use the term "facts" in conjunction with our double jeopardy test. *See Kokenes,* 213 Ind. at 479, 13 N.E.2d at 526 (" 'When the *facts* constitute two or more offences ....' ") (quoting *Elder,* 65 Ind. at 285) (emphasis added). However, in *Kokenes,* the Court did not inquire into the evidence introduced at trial or the specific factual allega- tions in the charging instruments, i.e., ·"the manner in which the offenses are charged." Rather, it reviewed the statutory elements and based its decision accordingly. *See also Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309 ("whether each [statutory] provision requires proof of an additional *fact* which the other does not") (emphasis added).

In *State v. Reed*, 168 Ind. 588, 81 N.E. 571 (1907), the Court found no double jeopardy violation when, in one trial, the defendant was charged with *giving* liquor to an intoxicated person in violation of statute and then convicted in a different trial (on the same day) of *selling* liquor to the same intoxicated person in violation of the same statute. The Court held that the statute defined three separate crimes: selling, bartering, and giving away liquor to an intoxicated person. *Id.* at 590, 81 N.E. at 572. The Court articulated the test as follows: " 'would the same evidence be necessary to secure a conviction in the pending, as in the former, prosecution?' " *Id.* at 591, 81 N.E. at 572 (quoting *Smith v. State*, 85 Ind. 553, 557 (1882)). The Court then looked to the identity of the challenged conviction, focusing on the essential elements necessary to convict: "Proof of a sale of intoxicating liquor by appellee to the person named in the indictment was one of the elements of the offense charged in this case, the proof of which was essential to conviction. . . ." *Id.* However, "in the former case, not a sale, but a gift, of intoxicating liquor by appellee to the person named in the affidavit was an essential element to be established by the evidence to secure conviction." *Id.* at 591–92, 81 N.E. at 572. Thus, the Court held, "It is evident therefore that the evidence necessary to secure appellee's conviction of a charge of selling in violation of § 2219 . . . would not have justified his conviction of the giving in violation of the same section charged in the former case." *Id.* at 592, 81 N.E. at 572.

The defendant in *Woodworth v. State*, 185 Ind. 582, 114 N.E. 86 (1916), pled guilty to the charge that he sold alcohol to a person on May 1 without a license. The defendant was thereafter convicted of a separate charge of keeping and operating a place where alcohol was sold, also on May 1. The defendant contended that the evidence of the sale was also the evidence of keeping and operating the place and, therefore, that he was being convicted for the same offense. The Court rejected his

argument without relying upon any particular test, finding that the statute "defines two separate and distinct" crimes. *Id.* at 585, 114 N.E. at 87. Looking to the statutory definitions, the court held:

> The gravamen of the first offense defined by the section of the statute under consideration is the unlawful sale of intoxicating liquors by a person without a license, while that of the second offense defined is the keeping and operating of a place where such liquors are sold in violation of law, or the having of such liquors in possession for such purpose.

*Id.* at 585–86, 114 N.E. at 87.

In *Durke v. State*, 204 Ind. 370, 183 N.E. 97 (1932), the defendant was convicted of burglary and then convicted of conspiracy to commit a felony (burglary), arising out of the same transaction. He claimed double jeopardy prohibited the second conviction. The Court noted that " '[t]he courts of this state . . . have leaned more strongly to the "identity of offense" test, which is that the second charge must be for the same identical act and crime as [the first offense].' " *Id.* at 377–78, 183 N.E. at 100 (quoting *Foran*, 195 Ind. at 60, 144 N.E. at 530). This test asks: " 'Would the same evidence be necessary to secure a conviction in the pending, as in the former prosecution.' " *Id.* at 378, 183 N.E. at 100 (quoting *Foran*, 195 Ind. at 60, 144 N.E. at 530 (quoting *Smith*, 85 Ind. at 557) (other citations omitted)). Instead of looking to the specific evidence actually introduced at trial, the Court looked to what evidence would, in general, be necessary to secure convictions for both crimes:

> [T]he essential proof in a prosecution for burglary would not be sufficient to convict one charged with the crime known as "conspiracy to commit a felony"—burglary. In the latter case the evidence must show a uniting or confederation of two or more persons to commit the burglary. In order to convict of the offense in the present case, it would not be necessary to prove actual partic-

ipation in the felony, but in order to convict one charged with burglary, there must be proof connecting the party with the overt act.

*Id.* Thus, a prosecution for burglary would not prohibit a prosecution for conspiracy to commit a felony (burglary). *Id. See also Dunkle v. State,* 241 Ind. 548, 551, 553–54, 173 N.E.2d 657, 659–60 (1961) (looking to "well established rules of statutory construction, as well as upon the definition of the terms used . . . [o]ur conclusion then is that to draw a weapon within the purview of § 448 . . . is a separate and distinct offense from that of pointing or aiming a weapon under § 452. . . . Appellant was not therefore twice convicted for but one offense. . . .").

■ In 1978, the analysis under the Indiana Constitution was merged with the federal constitutional test:[34] "Now that we are bound by the federal Double Jeopardy Clause, it is more necessary than ever that we be in line with federal standards." *Elmore v. State,* 269 Ind. 532, 537, 382 N.E.2d 893, 896 (1978). Although the *Elmore* Court erroneously concluded that the federal Supremacy Clause[35] *required* that the federal test govern all Indiana claims, it is clear that this Court, by 1978, considered *both* the Indiana Double Jeopardy Clause and the federal Double Jeopardy Clause to require the same test—a statutory "identity of offense" or "same evidence" test. *Id.* (noting the "obvious similarity" between the state and federal double jeopardy standards). Thus, when the *Elmore* Court merged our state double jeopardy analysis with the federal double jeopardy analysis, it was not a radical departure from our then-existing state constitutional analysis. The *Elmore* Court defined Indiana's "identity of offense" or "same

evidence" test: "whether if what is set out in the second indictment had been proved under the first, there could have been a conviction, or stated another way: would the same evidence be necessary to secure a conviction in the pending, as in the former prosecution." *Id.* (quoting *Foran,* 195 Ind. at 60, 144 N.E. at 530). Similarly, the *Elmore* Court defined what it called "the *Blockburger* 'identity of offense' or 'same evidence' test," *id.* at 540, 382 N.E.2d at 897, as " 'the difference or lack of difference in the evidence necessary to establish one particular crime as compared with that required to establish the other crime.' " *Id.* at 537, 382 N.E.2d at 896 (quoting *Dunkle,* 241 Ind. at 551, 173 N.E.2d at 658) (citations omitted). From this comparison, the *Elmore* Court concluded that "our method of analysis in cases involving multiple count offenders closely paralleled the methodology employed by federal courts for protecting Fifth Amendment guarantees." *Id.*

In 1982, this Court in *Tawney v. State,* 439 N.E.2d 582 (Ind.1982), introduced a new approach, in which a reviewing court was required to "look to the manner in which the offenses are charged and not merely to the statutory definitions of the offenses." *Id.* at 588. This analysis looked to the specific factual allegations regarding the means by which the charged offenses were alleged to have been committed. As we have noted, *"Tawney* did not attribute this additional requirement to an independent state double jeopardy protection found in Article 1, Section 14 of the Indiana Constitution." *Carter v. State,* 686 N.E.2d 834, 838 (Ind.1997). Rather, it relied upon lesser-included jury instruction case law. *See Tawney,* 439 N.E.2d at 588.

During the twenty years following *Elmore,* this Court frequently decided double

---

**34.** For claims asserting violations of the federal Double Jeopardy Clause, "the test to be applied to determine whether there are two offenses or only one, is whether each [statutory] provision requires proof of an additional fact which the other does not." *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309.

**35.** U.S. CONST. art. VI (the U.S. Constitution "shall be the supreme law of the land; and the judges in every state shall be bound thereby. . . .").

jeopardy issues by looking to the offenses as charged, believing that this approach was required by federal double jeopardy jurisprudence, and often referring in passing to the Indiana Constitution. We have recently recognized that this methodology is an inaccurate statement of federal double jeopardy law as established by *Blockburger*. *Carter*, 686 N.E.2d at 837; *Grinstead*, 684 N.E.2d at 486; *Games*, 684 N.E.2d at 474. Considering *Elmore*'s merger of Indiana double jeopardy law into federal constitutional analysis and its declaration that our state's double jeopardy jurisprudence must "be in line with federal standards," 269 Ind. at 537, 382 N.E.2d at 896, it is not surprising that we did not separately evaluate the Indiana Constitution as an additional, independent source of double jeopardy protection. Instead, we generally addressed double jeopardy claims by applying the prevailing understanding of federal jurisprudence and merely referred to the Indiana Double Jeopardy Clause. This Court today recognizes that these post-*Elmore*, pre-*Games* cases do not constitute precedent regarding the application of the Indiana Double Jeopardy Clause. Our action today should be understood to supercede these cases.[36]

From our review of the constitutional text, the history and circumstances surrounding its adoption, and the earliest cases interpreting and applying the provision, we conclude that Indiana's Double Jeopardy Clause was intended to prevent the State from being able to proceed against a person twice for the same criminal transgression. While none of the early cases presented a comprehensive analysis, a generally articulated test, or a standard of review for double jeopardy claims, the holdings in these decisions do reflect a common theme. A criminal transgression was a person's conduct that violated a statutorily defined crime. In seeking to determine whether two criminal transgressions were the same, this Court in its earliest decisions did not restrict its review only to a comparison of statutory elements of the crime or to an analysis of the language in the charging instruments. Rather, this Court also reviewed the actual evidence presented at trial when available.

Synthesizing these considerations, we therefore conclude and hold that two or more offenses are the "same offense" in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense.[37] Both of these considerations, the statutory elements test and the actual evidence test, are components of the double

---

**36.** These include the following cases: *Neal v. State*, 659 N.E.2d 122 (Ind.1995); *Chiesi v. State*, 644 N.E.2d 104 (Ind.1994); *Buie v. State*, 633 N.E.2d 250 (Ind.1994); *Webster v. State*, 628 N.E.2d 1212 (Ind.1994); *Campbell v. State*, 622 N.E.2d 495 (Ind.1993); *Wills v. State*, 595 N.E.2d 242 (Ind.1992); *Woodcox v. State*, 591 N.E.2d 1019 (Ind.1992); *Woods v. State*, 547 N.E.2d 772 (Ind.1989); *Ellis v. State*, 528 N.E.2d 60 (Ind.1988); *Jones v. State*, 523 N.E.2d 750 (Ind.1988); *Jones v. State*, 518 N.E.2d 479 (Ind.1988); *King v. State*, 517 N.E.2d 383 (Ind.1988); *Hansford v. State*, 490 N.E.2d 1083 (Ind.1986); *Malott v. State*, 485 N.E.2d 879 (Ind.1985); *Flowers v. State*, 481 N.E.2d 100 (Ind.1985); *Deamus v. State*, 479 N.E.2d 1319 (Ind.1985); *Bevill v. State*, 472 N.E.2d 1247 (Ind.1985). Some of our decisions during this period, however, involved only our understanding of federal jurisprudence and did not refer to our state constitutional provision. *See, e.g., Kennedy v. State*, 674 N.E.2d 966 (Ind.1996); *Gregory–Bey v. State*, 669 N.E.2d 154 (Ind.1996); *Collins v. State*, 659 N.E.2d 509 (Ind.1995); *Bivins v. State*, 642 N.E.2d 928 (Ind.1994); *Jackson v. State*, 625 N.E.2d 1219 (Ind.1993); *Derado v. State*, 622 N.E.2d 181 (Ind.1993); *Bean v. State*, 460 N.E.2d 936 (Ind.1984).

**37.** While this case and its companion cases probe important aspects of state and federal double jeopardy jurisprudence, our review and discussion are not intended to be exhaustive. Rather, the "same offense" issue is but one aspect of double jeopardy jurisprudence. Under some circumstances, even when two or more offenses constitute the same offense under a federal or state "same offense" test, no double jeopardy violation will be found to

jeopardy "same offense" analysis under the Indiana Constitution.

### Statutory Elements Test: _Could Separate Offenses Be Established?_

■ The objective of this test is to determine whether the essential elements of separate statutory crimes charged could be established hypothetically. In this test, the charged offenses are identified [38] by comparing the essential statutory elements of one charged offense with the essential statutory elements of the other charged offense. Inspecting the relevant statutes and the charging instrument to identify those elements which must be established to convict under the statute,[39] this review

considers the essential statutory elements to determine the identity of the offense charged, but does not evaluate the _manner_ or _means_ by which the offenses are alleged to have been committed, unless the manner or means comprise an essential element. Once the essential elements of each charged offense have been identified,[40] the reviewing court must determine whether the elements of one of the challenged offenses could, hypothetically, be established by evidence that does not also establish the essential elements of the other charged offense.[41]

■ In this case, defendant Richardson contends that his convictions for

---

have occurred. _See, e.g., Arizona,_ 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (holding that the federal Double Jeopardy Clause does not prohibit a retrial when the mistrial was a "manifest necessity," even if the mistrial is declared over the defendant's objection); _U.S. v. Dinitz,_ 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976) (holding that the federal Double Jeopardy Clause does not bar reprosecution for a mistried offense when the defendant requested or acquiesced in the mistrial); _United States v. Lanza,_ 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314 (1922) (holding that, under the federal Double Jeopardy Clause, a conviction or an acquittal in one jurisdiction does not bar a reprosecution by another jurisdiction for the "same offense"); _United States v. Perez,_ 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824) (holding that the federal Double Jeopardy Clause does not bar the reprosecution of a defendant for a mistried offense when the jury is unable to reach a verdict). These other aspects, however, are not at issue in this case.

**38.** Under this test, "the second charge must be for the same identical act and crime as [the first offense]." _Durke,_ 204 Ind. at 378, 183 N.E. at 100 (quoting _Foran,_ 195 Ind. at 60, 144 N.E. at 530). "[I]t must be said that the essential proof in a prosecution for burglary would not be sufficient to convict one charged with the crime known as 'conspiracy to commit a felony'—burglary." _Id. See also Reed,_ 168 Ind. 588, 81 N.E. 571.

**39.** "[I]dentity tests depend upon the evidence _required_ [under the statute] to convict, not the evidence actually introduced at trial." _Simon, supra,_ at 273 (emphasis added).

**40.** This inquiry is quite simple when a facial comparison of the charged crimes clearly

shows that separate offenses are involved. For example, if a defendant is charged with murdering A and murdering B, further inquiry into whether the offenses are the "same offense" for double jeopardy purposes is not warranted because the charged crimes are different on their face. They involve different victims. Similarly, if a defendant is charged with robbing a particular store on Monday and then again on Friday, the offenses are, facially, not the same. If a defendant is arrested and found to possess both cocaine and marijuana on his person, possession of cocaine under Indiana Code section 35–48–4–6 and possession of marijuana under Indiana Code section 35–48–4–11 are, facially, not the same offense.

**41.** This statutory elements test, which is one component of our "same offense" analysis under the double jeopardy provision of the Indiana Constitution, is similar to the "same elements" test, which comprises the federal double jeopardy analysis under _Blockburger._ The _Blockburger_ Court stated the federal standard as follows:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.

_Blockburger,_ 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309. Before _Blockburger,_ the Supreme Court had already stated:

> "The test is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense. A single act may be an offense against two statutes; and if each stat-

robbery and class A misdemeanor battery violate double jeopardy. Robbery as a class C felony is defined as follows:

> A person who knowingly or intentionally takes property from another person or from the presence of another person: (1) by using or threatening the use of force on any person; or (2) by putting any person in fear; commits robbery, a class C felony.

IND.CODE § 35–42–5–1 (1993). The defendant was charged as follows: "Robert M. Richardson II ... on or about the 31st day of August, 1996 ... did then and there knowingly or intentionally take property from another person, to-wit: a wallet containing $700 belonging to Jeffrey W. Koe-

nig by using or threatening the use of force." Record at 4. Under the statutory elements test, we focus on the essential elements comprising the charged offense of robbery: (1) the defendant (2) knowingly or intentionally (3) took property from (4) Koenig (5) by using or threatening the use of force on Koenig. The defendant could not be convicted at trial if these essential elements were not established.[42] Although the State may choose to do so, it is not *required* to include detailed factual allegations in the charging instrument. *See* IND.CODE § 35–34–1–2.[43] For example, in this case, the State could have charged as follows: Robert M. Richardson, II, on or about the 31st day of August 1996 did

---

ute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other."
*Gavieres v. United States*, 220 U.S. 338, 342, 31 S.Ct. 421, 422, 55 L.Ed. 489, 490 (1911) (quoting *Morey*, 108 Mass. at 434) (quoted in part in *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309). More recently, the Court has indicated:
> [T]he *Blockburger* test focuses on the proof necessary to prove the statutory elements rather than on the actual evidence to be presented at trial. Thus we stated that if " 'each *statute* requires proof of an additional fact which the other does not,' " the offenses are not the same under the *Blockburger* test.

*Illinois v. Vitale*, 447 U.S. 410, 416, 100 S.Ct. 2260, 2265, 65 L.Ed.2d 228, 235 (1980) (citations omitted). The Court also noted:
> As *Blockburger* and other decisions applying its principle reveal, the Court's application of the test focuses on the statutory elements of the offense. If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.

*Iannelli v. United States*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1294 n. 17, 43 L.Ed.2d 616, 627 n. 17 (1975) (citations omitted).

**42.** The statutory language regarding "putting any person in fear" is not an essential element in this case because the State charged him with "using or threatening the use of force." Similarly, the exact manner or means by which force was imposed is not essential, as the State need only show that *some* type of force was actually used. Additionally, the type of property stolen by the

defendant is not essential under the statute because the statute only requires *some* type of property be taken from Koenig. However, under the carjacking statute, the specific *type* of property—a motor vehicle—would be an essential element in determining the identity of the offense. *See* IND.CODE § 35–42–5–2 (1993) ("A person who knowingly or intentionally takes *a motor vehicle* from another person or from the presence of another person: (1) by using or threatening the use of force on any person; or (2) by putting any person in fear; commits carjacking, a Class B felony.") (emphasis added).

**43.** Interpreting this statute, we have specifically held that the charging instrument does not have to include "additional facts describing the injury inflicted or how it was inflicted." *Moody v. State*, 448 N.E.2d 660, 662 (Ind.1983). "The charging instrument informed appellant of the statutory offense with which he was charged, the time and the place of the commission of the offense, the identity of the victim of the crime, and the type of weapon he used. We hold the information was drafted with sufficient specificity to inform appellant of the nature of the charge against him." *Id. See also Evans v. State*, 497 N.E.2d 919, 922 (Ind.1986) (rejecting defendant's argument that the State was required to specify the physical acts which constituted the robbery, stating, "Where the charging instrument informs the defendant of the offense with which he is charged, the time and the place of its commission, the victim's identity and the type of weapon used, the instrument is drafted with sufficient specificity and need not disclose the specific conduct by the defendant which led to the injury.") (citation omitted).

intentionally take property belonging to Jeffrey W. Koenig by using force. Had the State chosen to do so, the charging information would have been valid, as the essential elements were specified.

The second offense at issue in this case is battery, as a class A misdemeanor. The statute provides that "[a] person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery...." IND.CODE § 35–42–2–1 (1993). The offense becomes a class A misdemeanor if "it results in bodily injury to any other person." *Id.* The charging instrument alleged that the defendant "on or about the 31st day of August, 1996 ... did then and there knowingly or intentionally touch another person in a rude, insolent or angry manner that resulted in bodily injury in that the said defendant beat a certain Jeffrey W. Koenig with his fist to the extent that the said [Koenig] suffered bodily injury." Record at 5. The essential elements of the class A misdemeanor battery charge are: (1) the defendant (2) knowingly or intentionally (3) touched (4) Koenig (5) in a rude, insolent, or angry manner (6) resulting in bodily injury to Koenig.[44]

■ Having identified the essential elements comprising the offense, we compare the essential elements of the two challenged offenses. Each offense must contain at least one element which is separate and distinct from the other offense so that the same evidence is not necessary to convict for both offenses. *See Durke,* 204 Ind. at 378, 183 N.E. at 100 (citing *Foran,* 195 Ind. at 60, 144 N.E. at 530 (citing *Smith,* 85 Ind. at 557)). In this case, the essential elements of the offense of battery as a class A misdemeanor include the element of a resulting bodily injury, which is not included in the essential elements of robbery. Furthermore, battery requires a touching in a rude, insolent, or angry manner, whereas robbery merely requires the use or threat of force. Also, an essential element of the robbery is the taking of some type of property from Koenig, which is separate and distinct from the essential elements of the battery. Under our statutory elements test, each offense of which the defendant was convicted contains at least one essential element that is separate and distinct from the other offense, and, therefore, the State could hypothetically prove separate offenses without using the same evidence. Thus, under the statutory elements test, there is no double jeopardy violation.[45]

### *Actual Evidence Test: Were Separate Offenses Established at Trial?*

■ As previously noted, the examination of the evidence presented at trial was an integral component of the double jeopardy analysis employed in those decisions of this Court immediately following the adoption of our Double Jeopardy

---

**44.** The exact nature of bodily injury and the exact means or manner by which the touching occurred are not essential elements. The State need only show that *some* type of rude, insolent, or angry touching and *some* bodily injury occurred. *See supra* note 43 and accompanying text.

**45.** In contrast, the Indiana Double Jeopardy Clause would be violated under this essential elements test when, for example, a defendant is convicted and sentenced for both robbery and felony murder based on the killing of a clerk in the course of the robbery. *See, e.g., Mitchell v. State,* 270 Ind. 4, 382 N.E.2d 932 (1978). If the charging instrument identifies the same robbery as the basis for both the felony murder and the robbery counts, proof of the robbery would be an essential element of the statutory offense of felony murder. In this example, there is no possibility that any evidence could establish the essential statutory elements of the felony murder charge without also establishing the essential statutory elements of the robbery charge. The charged robbery does not contain at least one essential element that is separate and distinct from the charged felony murder offense. But a defendant would not be twice placed in jeopardy for the "same offense" under the Indiana Double Jeopardy Clause if, for example, he is convicted and sentenced for both robbery and felony murder and the identities of the victims of the murder and the robbery are different. *See, e.g., Reaves v. State,* 586 N.E.2d 847, 851 (Ind.1992).

Clause. We preserve this component, the actual evidence test, as a separate consideration to be used in analyzing the "same offense" issue in a claim under the Indiana Double Jeopardy Clause. Even if the first consideration, the statutory elements test, does not disclose a double jeopardy violation, the actual evidence test may. Under this inquiry, the actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.[46]

This second test in our Indiana Double Jeopardy Clause "same offense" analysis

differs significantly from federal jurisprudence under *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309. "The *Blockburger* test has nothing to do with the *evidence* presented at trial. It is concerned *solely* with the statutory elements of the offenses charged." *Grady v. Corbin,* 495 U.S. 508, 521 n. 12, 110 S.Ct. 2084, 2093 n. 12, 109 L.Ed.2d 548, 564 n. 12 (1990), *overruled on other grounds, United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993) (second emphasis added).[47]

At oral argument, the State asserted that, because the number of statutes and offenses has grown exponentially since our Indiana Constitution was ratified, and because *Blockburger* provides a clear, bright-line double jeopardy test, we should adopt *Blockburger* to govern our state Double Jeopardy Clause. On the other hand, the defendant argued that this Court should adopt the "manner in which the offenses

**46.** Our early cases are not conclusive as to the standard of review to be applied. In *Brinkman,* 57 Ind. 76, the Court may have considered the *possibility* that the same evidence may have resulted in two separate convictions. In other cases, however, the Court did not utilize this standard but rather appears to have engaged in its own assessment to determine if the evidence reasonably provided an independent factual basis for two separate offenses. *See, e.g., Wininger,* 13 Ind. 540; *Greenwood,* 64 Ind. 250; *Jenkins,* 78 Ind. 133. We believe that the use of the "reasonable possibility" standard fairly implements the protections of the Indiana Double Jeopardy Clause and also permits convictions for multiple offenses committed in a protracted criminal episode when the case is prosecuted in a manner that insures that multiple guilty verdicts are not based on the same evidentiary facts.

**47.** The result in *Games,* 684 N.E.2d 466, was not based upon any change in federal multiple punishments jurisprudence resulting from the U.S. Supreme Court decision in *Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556. *Games* was not based upon *Dixon* in particular, but upon federal double jeopardy jurisprudence in general. As we noted in *Games, Dixon* dealt with the U.S. Supreme Court's treatment of *successive prosecutions,* which had changed in recent years under

*Grady,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548. Prior to *Grady,* the Court focused exclusively on statutory elements in cases of *both* successive prosecution and multiple punishment. Until it was overruled by *Dixon* in 1993, *Grady* added a "second prong" to the *Blockburger* test for *successive prosecution cases,* requiring a court to consider whether the conduct underlying the offenses was the same. Neither *Grady* nor *Dixon* dealt with multiple punishments, except to reaffirm that the multiple punishment analysis was not affected by the *Grady /Dixon* problems. *See Games,* 684 N.E.2d at 476 & n. 11 (discussing *Dixon* and noting that the Supreme Court's treatment of multiple punishments has remained unchanged since the early 1900s and that the Court's treatment of successive prosecution analysis was changed for only the three years between *Grady* and *Dixon* ). *See also Rutledge v. United States,* 517 U.S. 292, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996); *Albernaz,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275; *Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228; *Whalen,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715; *Iannelli,* 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616; *Blockburger,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306; *Ebeling v. Morgan,* 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151 (1915); *Morgan v. Devine,* 237 U.S. 632, 35 S.Ct. 712, 59 L.Ed. 1153 (1915); *Gavieres,* 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489.

are charged" analysis. We disagree with both, believing the original application of the Indiana Double Jeopardy Clause to be broader than these two approaches.

In the present case, the evidence presented at trial establishes the following facts. On August 31, 1996, many people were at a lake area consuming alcohol and using drugs. The defendant noticed that one of those present, Jeff Koenig, appeared to possess a considerable amount of money. The defendant, along with Koenig and two other men, got into an automobile apparently to drive to another party. The automobile stopped on a bridge, and the men exited the vehicle, ostensibly to relieve themselves. When Koenig exited the vehicle, he was hit from behind with a beer bottle and knocked to the ground. The three men repeatedly kicked and beat him. Two of the men then held Koenig down while the third took Koenig's billfold from his pocket. After his billfold was removed, Koenig was pushed over the side of the bridge. The men left Koenig and returned to the party, bragging about what they had just done.

The defendant contends that the evidence of the beating prior to the robbery forms the basis of both convictions. We note, however, that the evidence presented at trial also demonstrated that, after the defendant and his companions beat Koenig and took his billfold—thus *completing* the robbery—they then pushed Koenig off the bridge. While this post-robbery conduct could potentially indicate a subsequent, factually separate battery justifying a separate conviction, there was no actual evi-

dence to prove the element of resulting bodily injury from this separate conduct.[48] From the evidence presented, we find that the defendant has demonstrated a reasonable possibility that the evidentiary facts used by the jury to establish the essential elements of robbery were also used to establish the essential elements of the class A misdemeanor battery. Application of the actual evidence test thus discloses that convicting and sentencing the defendant on both of these offenses violates the Indiana Double Jeopardy Clause.

 When two convictions are found to contravene double jeopardy principles, a reviewing court may remedy the violation by reducing either conviction to a less serious form of the same offense if doing so will eliminate the violation. *See, e.g., Campbell v. State,* 622 N.E.2d 495, 500 (Ind.1993) (affirming reduction of class C felony battery to class B misdemeanor battery to avoid double jeopardy). If it will not, one of the convictions must be vacated. In the interest of efficient judicial administration, the trial court need not undertake a full sentencing reevaluation, but rather the reviewing court will make this determination itself, being mindful of the penal consequences that the trial court found appropriate. In the present case, the crime of robbery does not exist in a form less serious than the class C felony, for which the defendant was convicted. But a lesser form of battery could result, a class B misdemeanor in the absence of the element of resulting bodily injury, instead of the class A misdemeanor, for which he was convicted. Even if considered in this

**48.** Although the lack of evidence of bodily injury resulting from being shoved off the bridge (as required for a separate and independent class A misdemeanor battery) is determinative, we further observe that the closing arguments of counsel, in discussing the proof of battery, focused solely on the evidence of the beating that preceded the removal of the wallet. Furthermore, the preliminary instructions in this one-day trial advised the jury that the battery charge alleged that "defendant beat [Koenig] with his fist to the extent that [Koenig] suffered bodily injury."

Record at 41. The jury instructions and presentations of counsel to the jury can be helpful to the reviewing court in its analysis of the actual evidence to determine whether a jury used the same evidence to establish multiple offenses. Because the court's instructions and counsel's remarks are not evidence, however, neither would be determinative in the presence of actual evidence that the jury reasonably could have used to independently establish the essential elements of the separate offenses.

reduced class, however, there is a reasonable possibility that the evidentiary facts used by the jury to establish the essential elements of robbery would also be used to establish battery as a class B misdemeanor. Because both convictions therefore cannot stand, we vacate the conviction with the less severe penal consequences and leave standing the robbery conviction.

### Conclusion

Because the defendant's convictions for both robbery and battery as a class A misdemeanor, under the circumstances presented, violate the Double Jeopardy Clause of the Indiana Constitution, we vacate the conviction and sentence for battery as a class A misdemeanor. This cause is remanded to the trial court for disposition consistent with this opinion.

SHEPARD, C.J., concurs. SULLIVAN, J., concurs with separate opinion. SELBY, J., concurs in result with separate opinion. BOEHM, J., concurs in result with separate opinion, in which SELBY, J., concurs.

SULLIVAN, Justice, concurring.

I congratulate Justice Dickson on his comprehensive and enlightening analysis. I concur because I believe his formulation encompasses those limited number of specific situations (deemed "superseded") where this Court has been unwilling to impose multiple punishments upon a defendant who commits two crimes at the very same time against the same victim. At this time, however, I am unwilling to extend this formulation beyond these situations.

My own analysis suggests that these situations fall into five categories:

1. *Conviction and punishment for a crime which is a lesser-included offense of another crime for which the defendant has been convicted and punished.* Examples of this situation are provided by such cases as *Bivins v. State*, 642 N.E.2d 928, 945 (Ind.1994) (vacating a conviction for theft because it was a lesser-included offense of robbery), and *Wethington v. State*, 560 N.E.2d 496, 506 (Ind.1990) (vacating a conviction for theft because it was a lesser-included offense of robbery).

However, this category does not include situations where the two crimes have different victims, *e.g.*, *Reaves v. State*, 586 N.E.2d 847, 851 (Ind.1992), or where the crimes occur separate and independent of each other, *e.g.*, *Bean v. State*, 460 N.E.2d 936, 943 (Ind.1984).

2. *Conviction and punishment for a crime which consists of the very same act as another crime for which the defendant has been convicted and punished.* An example of this situation is *Jones v. State*, 523 N.E.2d 750, 754 (Ind.1988) (vacating a battery conviction because the information showed that the identical touching was the basis of a second battery conviction).

3. *Conviction and punishment for a crime which consists of the very same act as an element of another crime for which the defendant has been convicted and punished.* Mr. Richardson's situation in this case falls into this category. Another example is *Wethington v. State*, 560 N.E.2d 496, 508 (Ind.1990) (vacating a confinement conviction because the confinement was coextensive with the behavior or harm necessary to establish an element of a robbery conviction).

We have not extended relief, however, in situations where the subject behavior or harm is either separate from or more extensive than that necessary to constitute the element of the first crime. Examples of relief being denied on this basis include *Webster v. State*, 628 N.E.2d 1212, 1214 (Ind.1994) (affirming attempted rape, criminal deviate conduct and confinement convictions because the confinement extended beyond that necessary to establish an element of the attempted rape and criminal deviate conduct convictions); *Purter v. State*, 515 N.E.2d 858, 860 (Ind.1987) (affirming rape and confinement convictions because the confinement extended beyond

that necessary to establish an element of the rape conviction); *Edwards v. State,* 479 N.E.2d 541, 545 (Ind.1985) (affirming attempted rape and confinement convictions because the confinement extended beyond that necessary to establish an element of the attempted rape conviction).

4. *Conviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished.* The legislature has provided that the punishment classification of certain crimes may be enhanced if the behavior which constitutes the crime is accompanied by certain specified additional behavior or causes certain specified additional harm.[1] In situations where a defendant has been convicted of one crime for engaging in the specified additional behavior or causing the specified additional harm, that behavior or harm cannot also be used as an enhancement of a separate crime; either the enhancement or the separate crime is vacated. Recent examples include *Kingery v. State,* 659 N.E.2d 490, 496 (Ind.1995), and *Moore v. State,* 652 N.E.2d 53, 60 (Ind.1995), both reducing a Class A enhancement to a robbery conviction because the very same killing that was the basis of the enhancement was also the basis of a murder conviction. Today's decision in *McIntire v. State,* 717 N.E.2d 96 (Ind.1999), also falls into this category.

A closely related set of cases provide that to the extent that a defendant's conviction for one crime is enhanced for engaging in particular additional behavior or causing particular additional harm, that behavior or harm cannot also be used as an enhancement of a separate crime. *See*

*Campbell v. State,* 622 N.E.2d 495, 500 (Ind.1993) (reducing a Class C enhancement to a battery conviction because the very same serious bodily injury that was the basis of the Class C enhancement was also the basis of a Class A enhancement to a burglary conviction).

On the other hand, where separate victims are involved or the behavior or harm that is the basis of the enhancement is distinct and separate, no relief will be provided. *See Woods v. State,* 677 N.E.2d 499, 501–02 (Ind.1997) (affirming a Class A enhancement to a robbery conviction because the serious bodily injury that was the basis of the enhancement was separate and distinct from that which was the basis of a murder conviction); *Jackson v. State,* 625 N.E.2d 1219, 1222 (Ind.1993) (same); *Hansford v. State,* 490 N.E.2d 1083, 1089 (Ind.1986) (affirming Class A enhancements to burglary and robbery convictions because the serious bodily injuries that were the bases of the enhancements were inflicted on different victims).

5. *Conviction and punishment for the crime of conspiracy where the overt act that constitutes an element of the conspiracy charge is the very same act as another crime for which the defendant has been convicted and punished.* Conspiracy requires an agreement by two or more people to commit a crime and an overt act in furtherance of the agreement. While a defendant can be guilty of both conspiracy to commit a crime and the underlying crime itself, what is at stake in this category is assuring that indeed the conspiracy is a separate and distinct act from the underlying crime. Put more concretely, in situations where the overt act itself is no more than the underlying crime, any time two or more persons commit a crime, at least one will be guilty of both conspiracy and the

---

1. For example, a person commits Robbery, a Class C felony, by knowingly or intentionally taking property from another person or from the presence of another person by using or threatening the use of force on any person or by putting any person in fear. However, the crime is enhanced to a Class B felony if it is committed while armed with a deadly weapon or results in bodily injury to any person other than a defendant. And the crime is enhanced to a Class A felony if it results in serious bodily injury to any person other than a defendant. Ind.Code § 35–42–5–1 (1998).

underlying crime—the element of agreement can be inferred from their concerted action and the overt act found in their commission of the crime.

This point was explained in *Chiesi v. State*, 644 N.E.2d 104, 106 (Ind.1994). There the defendant was charged with both Conspiracy to Commit Murder and Murder. While this case turned to some extent on the adequacy of the charging information, the defendant cited *Buie v. State*, 633 N.E.2d 250, 261 (Ind.1994), as authority for setting aside the conspiracy conviction. But we noted, "It is evident that in *Buie* the conspiracy to commit and the subject crime were committed virtually simultaneously and that the only overt act completing the conspiracy was the murder itself.... [U]nlike *Buie* where the conspiracy and killing constituted a single offense, in the case at bar, appellant not only entered into a lengthy conspiracy but committed several overt acts following the conspiracy in order to participate in the carrying out of the actual murder." *Chiesi*, 644 N.E.2d at 106–07. *Guffey v. State*, 717 N.E.2d 103 (Ind.1999), which we decide today falls into this category.

SELBY, J., concurring in result.

What is "double jeopardy?" I believe that when asked this question, most people, and indeed most Hoosiers, would say that it is to be tried twice for the same crime. The answer likely would be just this simple, without regard to notions of multiple punishment, dual convictions, the meaning of an offense and the like. Double jeopardy is a bedrock principle of our constitutional law. *See Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *Elmore v. State*, 269 Ind. 532, 382 N.E.2d 893 (1978). Nevertheless, as Justice Boehm points out, "confusion over double jeopardy is not new." 717 N.E.2d at 59. Although the decisions announced today fairly characterize the importance of the concept of double jeopardy to criminal law, they lose sight of what for many citizens is thought to be a straightforward idea—a person cannot be tried twice for the same crime. I join in Justice Boehm's opinion because I believe that it is the most consistent with what double jeopardy ought to be under Article I, § 14 of the Indiana Constitution.

BOEHM, Justice, concurring in result.

I agree, as do all members of the Court, that the test for permitting convictions on two or more counts in the same trial is as the majority formulates it. However, I conclude that today's case may be decided without resort to constitutional doctrine because the dual convictions here are barred by statutory and common law doctrines, irrespective of constitutional considerations. More broadly, I believe that dual convictions in a single case do not present an Indiana constitutional double jeopardy claim at all. Rather Article I, § 14 should be invoked only as a bar to subsequent prosecutions. Because the majority addresses the constitutional provision, and because I agree that the important and unsettled matter of the scope of double jeopardy protection under the Indiana Constitution must be resolved by this Court, I express my views on that subject.

Justice Sullivan points to recent decisions of this Court that prohibit (1) conviction and punishment for a lesser included offense of another crime for which the defendant has been convicted and punished; (2) conviction and punishment for two crimes that consist of the same act; (3) conviction and punishment for a crime that consists of the same act as an element of another crime for which the defendant has been convicted and punished; (4) enhancement of a crime where the enhancement is imposed for the same behavior or harm that enhanced another crime or the same behavior that constitutes another crime for which the defendant has been convicted and punished; and (5) conviction and punishment for the crime of conspiracy where the overt act that constitutes an

element of the conspiracy charge is the same act as another crime for which the defendant has been convicted and punished. For the reasons explained below, I believe the rules announced or followed in these precedents are correct in their results and are accurate statements of Indiana law. In most cases they represent long-standing principles of Indiana law. However, I believe they are not constitutional rules but are rather either direct applications or legitimate descendants of rules followed at common law and even in Greek and Roman law.[1] To the extent Indiana precedents refer to the Indiana Constitution in resolving multiple punishment cases the decisions are relatively recent and incorrectly and unnecessarily describe prior common law precedent as based on the Indiana Constitution. Regardless of the origin of these rules, I agree that they are the law of this state. In multiple punishment cases they produce the same results as the majority's analysis yields. I also agree with the test, which the majority describes as "actual evidence," for evaluating whether we have the same act supporting two convictions.

I recognize that the majority opinion accurately recounts much of the precedent under the Double Jeopardy Clause of the constitution of this state and other similar constitutional provisions. I also freely concede that many of the recent decisions refer to Article I, § 14, albeit only in passing. However, I believe, as the majority correctly points out, that none of these cases purports to deal with the Indiana Constitution apart from the Fifth Amendment. I justify my willingness to challenge these cases as constitutional precedent on the basis that there is no consistent precedent in this state as to the meaning of this provision. As explained below, many of these precedents rest on very shaky footing and most, if not all, seem to assume an identity of federal and

state doctrines that is rejected by every Justice on this Court. Equally significant, our precedent does not support and certainly does not demand that we regard multiple punishment cases as implicating the Double Jeopardy Clause of the Indiana Constitution.

The majority relies on subsequent prosecution cases in crafting a test for the multiple punishment context because "this Court has not distinguished between double jeopardy protections in multiple punishment cases and those in subsequent prosecution cases." I do not agree that this Court has uniformly treated the two as identical. As explained in Part I.A. both before and after the federal Double Jeopardy Clause was held applicable to state prosecutions this Court explicitly stated that multiple punishments imposed in one trial do not present a double jeopardy issue because there was no "former jeopardy." Finally, my complaints about finding double jeopardy implications in multiple punishment are not grounded merely in a need for doctrinal purity. Mixing the multiple punishment and subsequent prosecution strands, as has occurred in federal double jeopardy law, results in an unsatisfactory compromise that breeds confusion and impairs the important values underlying the Double Jeopardy Clause.

In sum, I believe Article I, § 14 reflects a value that is most important in the subsequent prosecution context. A test that is intended to fortify the Double Jeopardy Clause but accommodates the needs of multiple punishment doctrine ends up impairing the most important function of the constitutional provision. And, as explained *infra* in Part I.C., constitutionalizing these common law multiple punishment rules does nothing to restrict the legislature's ability to "pile on" punishments in a single case if it wishes to do so. It thus adds nothing but complication to the protection

---

1. *See* JOSHUA DRESSLER, UNDERSTANDING CRIMINAL PROCEDURE § 199[A][1] (1991); Comment,

*Twice in Jeopardy*, 75 YALE L.J. 262 (1965).

afforded by the Double Jeopardy Clause, and does so at some cost.

## I. Double Jeopardy Precedent and Purpose

"Double jeopardy," like "due process of law," is an umbrella term that has evolved over time and embraces several discrete concepts. Thus it is important to understand the various circumstances and the different procedural postures in which double jeopardy has been asserted. Situations that defendants have claimed give rise to a claim of double jeopardy include: (1) a single act that violates multiple statutes with no common elements (sale of cocaine to a minor as both dealing and contributing to delinquency); (2) a single act that violates multiple statutes with both common elements and distinct elements (rape and child molest); (3) "included offenses" where all the elements of one crime are among those of the other (cocaine possession and cocaine possession with intent to deliver); (4) a single act that violates a single statute but creates more than one victim (multiple murders committed with a single bullet or bomb); (5) closely related acts that injure the same victim (robbery and battery such as we have in this case); and (6) closely related acts that create separate injuries.[2] The double jeopardy concerns raised in these various contexts are not the same. Nonetheless, as elaborated below, courts frequently treat them as interchangeable.

Double jeopardy claims arise in differing procedural postures as well as varying fact patterns. The clause has been invoked in both multiple punishments imposed in the same trial and to subsequent prosecutions of the same defendant. Frequently the cases dealing with one context cite precedent from another without commenting on any potential difference between the two. More frequently, after 1969, we find cases correctly citing *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), for the proposition that "double jeopardy" bars multiple punishments without focusing on whether the federal and state constitutions are identical in this respect, or precisely what *Pearce* meant by that language. In my view, however, subsequent prosecutions for a single act and convictions for multiple crimes in a single prosecution turn on entirely different considerations[3]—some constitutional and some not—and require different treatment.[4] As used in this opinion, "multiple punishments" is shorthand for the latter, although the term may fairly describe other situations including some that may implicate constitutional double jeopardy concerns.

### A. Indiana Constitutional and Common Law Precedent

Confusion over double jeopardy is not new. Over twenty years ago, this Court addressed punishment for multiple of-

---

**2.** An example is the seminal cutting of multiple mailbags in the same incident described in *Ebeling v. Morgan*, 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151 (1915).

**3.** As the Court observed in *Grady v. Corbin:*

Successive prosecutions, however, whether following acquittals or convictions, raise concerns that extend beyond merely the possibility of an enhanced sentence: ... the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity.... Multiple

prosecutions also give the State an opportunity to rehearse its presentation of proof, thus increasing the risk of an erroneous conviction for one or more of the offenses charged.

495 U.S. 508, 518, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990) (citations omitted), *overruled by United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993).

**4.** The question whether the double jeopardy right under the Indiana Constitution distinguishes between these two settings was expressly reserved two years ago in *Games v. State*, 684 N.E.2d 466, 476 n. 11 (Ind.1997), *modified on reh'g*, 690 N.E.2d 211 (Ind.1997), *cert. denied*, ⎯ U.S. ⎯, 119 S.Ct. 98, 142 L.Ed.2d 78 (1998).

fenses under the Fifth Amendment and reviewed "several of our recent decisions which appear[ed] to .be in conflict." *Elmore v. State*, 269 Ind. 532, 533, 382 N.E.2d 893, 894 (1978). As we recently noted in *Games v. State*, there is no authority from this Court "establishing an independent state double jeopardy protection based upon an analysis of the Indiana Constitution." 684 N.E.2d 466, 473 n. 7 (Ind.1997), *modified on reh'g*, 690 N.E.2d 211 (Ind.1997), *cert. denied*, —— U.S. ——, 119 S.Ct. 98, 142 L.Ed.2d 78 (1998).[5] Specifically, there has been, and remains, widespread confusion in the decisional law and in the commentary as to what constitutes the "same offense," and under what circumstances the protection against double jeopardy may be invoked. Although I concede that today's case is decided in the light of several relatively recent precedents stating or assuming that multiple punishments for the same offense implicate the constitutional right, this notion lacks foundation in either constitutional text, constitutional principle or solid authority.

First as a matter of syntax, Article I, § 14 does not appear to deal with multiple punishments at all. As this Court recently observed in another context, "the cardinal principle of constitutional construction [is] that words are to be considered as used in their ordinary sense." *Ajabu v. State*, 693 N.E.2d 921, 929 (Ind.1998) (quoting *Tucker*

*v. State*, 218 Ind. 614, 670, 35 N.E.2d 270, 291 (1941)). The relevant portion of Article I, § 14 provides that "[n]o person shall be put in jeopardy twice for the same offense." As Justice Scalia pointed out in his dissent in *Department of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 798, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994): " '[t]o be put in jeopardy' does not remotely mean 'to be punished,' so by its terms this provision prohibits, not multiple punishments, but only multiple prosecutions." [6]

Second, Indiana authority does not provide a sound footing for applying double jeopardy to multiple punishment cases. Indeed it is very clear that some of the seminal cases cited for the proposition that multiple punishments implicate Article I, § 14 of the Indiana Constitution stand for precisely the opposite conclusion. The majority suggests that multiple punishment challenges under Article I, § 14 first began appearing in the 1930s. *See* 717 N.E.2d at 43 n. 25. Of the eleven cases cited by the majority, seven neither mention "double jeopardy" nor refer to either the federal or the state constitution.[7] Three other cases recite a defendant's invocation of "double jeopardy" protection, but the Court's analysis turns on common law principles.[8] The remaining case rejects the defendant's claim that "constitutional double jeopardy" prohibits separate

**5.** *Games* and subsequent cases following it, for example, *Haak v. State*, 695 N.E.2d 944 (Ind.1998), and *Valentin v. State*, 688 N.E.2d 412 (Ind.1997), specifically declined to address Indiana constitutional issues. Neither did they purport to address or modify statutory or common law doctrines dealing with multiple punishments.

**6.** The large body of law declaring that jeopardy attaches when the jury is sworn also supports this conclusion. *See, e.g., United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977) (jeopardy attaches when jury sworn); *Maddox v. State*, 230 Ind. 92, 102 N.E.2d 225 (1951) (same); *see also* IND.CODE § 35–41–4–3 (1998). There is only one such event in a single trial regardless of the number of counts.

**7.** *Sutton v. State*, 248 Ind. 1, 221 N.E.2d 430 (1966); *Dowd v. Todd*, 243 Ind. 232, 184 N.E.2d 4 (1962); *Tungate v. State*, 238 Ind. 48, 147 N.E.2d 232 (1958); *Mims v. State*, 236 Ind. 439, 140 N.E.2d 878 (1957); *Havener v. State*, 234 Ind. 148, 125 N.E.2d 25 (1955); *Woods v. State*, 234 Ind. 598, 130 N.E.2d 139 (1955); *Carter v. State*, 229 Ind. 205, 96 N.E.2d 273 (1951).

**8.** *See Kokenes v. State*, 213 Ind. 476, 13 N.E.2d 524 (1938) (lesser included offenses); *Lawson v. State*, 202 Ind. 583, 177 N.E. 266 (1931) (separate and distinct offenses support two convictions); *Pivak v. State*, 202 Ind. 417, 175 N.E. 278 (1931) (same).

convictions for drawing and aiming a firearm, citing *Blockburger* and rules of statutory construction.[9]

This Court itself did not explicitly state that multiple punishments in one proceeding violated Article I, § 14 until *Bevill v. State*, 472 N.E.2d 1247, 1253 (Ind.1985), which was clearly incorrect in citing earlier authority for this assertion. To understand this point, begin with *Kokenes v. State*, 213 Ind. 476, 13 N.E.2d 524 (1938), which the majority cites as an example of a multiple punishment double jeopardy case. That case held that convictions for a greater and lesser included offense (armed robbery and robbery) could not stand. It is not at all clear however, that *Kokenes* is a constitutional double jeopardy case under either the federal or state constitution. First, although *Kokenes* cites some double jeopardy cases dealing with subsequent prosecutions, there is no mention in *Kokenes* of either constitution. The only mention of the term "jeopardy" is to point out that because defendant was convicted of robbery and armed robbery in the same case "there was no *former* jeopardy." [10] *Id.* at 480, 13 N.E.2d at 526 (emphasis in original). Nonetheless, the robbery conviction was thrown out in *Kokenes* because a defendant may not be "convicted of committing a robbery and committing a robbery while armed, where the same identical robbery is involved." *Id.* at 479, 13 N.E.2d at 526. The Court thus spoke only in common law language, not in constitutional terms, and invoked a rule that bars the dual convictions while in the very same opinion rejecting a claim of "former jeopardy."

The authorities cited by *Kokenes* also demonstrate that it was purely a common law holding. For example, *Jackson v.* *State*, 14 Ind. 327, 328 (1860), was cited for the proposition that "the state cannot split up one crime and prosecute it in parts." *Jackson* made no mention of the constitution and cites only common law authorities. *Kokenes* also cited *State v. Elder*, 65 Ind. 282 (1879), which recognized the common law roots of the "former jeopardy" doctrine and concluded that:

> No person shall be put in jeopardy twice for the same offense is a common-law principle, which, we believe, is incorporated into the constitutions of each of the States which compose the United States. This provision, however, has not been interpreted and applied uniformly throughout all the States. In some it has been held to mean no more than the common law principle.

*Id.* at 284. The *Elder* court summarized the then already confusing state of the law in a set of principles, all of which dealt with whether a subsequent prosecution could be brought. It supported its summary of the law with a series of citations to the distinguished treatises of its day that very clearly dealt only with the problem of subsequent prosecutions [11] and a long list of cases from Indiana and elsewhere. The first two cited Indiana cases are *Jackson*, 14 Ind. at 327, and *Bruce v. State*, 9 Ind. 206 (1857). Neither of these cases made any mention of either the state or federal constitution. Each held a second prosecution barred by reason of a prior prosecution, citing the "rule" that an earlier prosecution for the same offense would bar a second.

In 1969, *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), for the first time held the Fifth Amendment Double Jeopardy Clause applicable

---

9. *Dunkle v. State*, 241 Ind. 548, 173 N.E.2d 657 (1961).

10. It is noteworthy that the indexes to criminal law texts of the nineteenth and early twentieth centuries do not use the term "double jeopardy" but rather refer to "former" jeopardy, suggesting a sole focus on subsequent

prosecution. *See, e.g.,* FRANCIS WHARTON, AMERICAN CRIMINAL LAW (6th ed. 1868).

11. The title of the cited section in Wharton's AMERICAN CRIMINAL LAW (6th ed. 1868) is "autrefois acquit" which means "formerly acquitted" according to BLACK'S LAW DICTIONARY 134 (6th ed.1990).

to state criminal proceedings. In the same year *Pearce* announced the federal doctrine that the Fifth Amendment applied to multiple punishments. Three years later in *Thompson v. State*, 259 Ind. 587, 290 N.E.2d 724 (1972), this Court explicitly rejected a claim that double jeopardy applied to multiple punishments, citing both the Fifth Amendment and Art. I, § 14 of the Indiana Constitution:

> The Double Jeopardy clause is assurance that the State will not be allowed to make *repeated attempts to convict* an accused for the same offense. U.S. CONST. amen. V and XIV; IND. CONST. Art. 1, § 14; *See Benton v. Maryland,* (1969), 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707; *Green v. United States,* (1957), 355 U.S. 184, 78 S.Ct. 221, 61 A.L.R.2d 1119, 2 L.Ed.2d 199; *Armentrout v. State,* (1938), 214 Ind. 273, 15 N.E.2d 363. Since Appellant has been subjected to *only one judicial proceeding* for the offenses charged, his claim of double jeopardy is inappropriate.

259 Ind. at 591–92, 290 N.E.2d at 726 (emphasis in original). *Thompson* nonetheless held the dual conviction impermissible, not as a matter of federal or state constitutional double jeopardy doctrine, but rather as a matter of state law: "[w]e hold that before the court may enter judgment and impose sentence upon multiple counts, the facts giving rise to the various offenses must be independently supportable, separate and distinct." *Id.* at 592, 290 N.E.2d at 727. I take it that this formulation as applied to multiple punishments amounts to essentially the same thing as today's majority's more precise way of putting it—there should be no reasonable possibility that the same set of facts supports two convictions.

12. *See, e.g., Elder,* 65 Ind. at 282.

13. *See, e.g., Candler v. State,* 266 Ind. 440, 363 N.E.2d 1233 (Ind.1977); *Williams v. State,* 267 Ind. 700, 373 N.E.2d 142 (Ind.1978).

The Court next used the term "double jeopardy" in the course of an opinion rejecting the defendant's claim that his convictions for asportation and kidnaping were error because the two were separate offenses. *Neal v. State,* 266 Ind. 665, 366 N.E.2d 650 (1977). "It is only when two offenses require proof of the same fact or act that double jeopardy considerations bar a prosecution for both." *Id.* at 667, 366 N.E.2d at 651. The Court did not cite either constitution for this proposition.

*Elmore,* 269 Ind. at 532, 382 N.E.2d at 893, seems to be the first case to deal with multiple punishments solely as a constitutional double jeopardy issue. *Elmore,* citing *Pearce,* viewed the issue solely as a Fifth Amendment problem and made no mention of the state constitution. *Elmore* expressly and correctly observed that *Thompson* was incorrect insofar as it dealt with the federal constitutional standard. But *Elmore* did not address the question whether *Thompson* remained a correct statement of Indiana common law. *Elmore* dealt with a single trial that produced convictions for both theft and conspiracy to commit theft. The Court of Appeals, invoking the common law doctrine of "merger," held that the two convictions "merged." On transfer this Court took the view, which was inconsistent with both venerable [12] and then recent [13] authorities, that "[t]oday, the problem of when a trial court may impose multiple punishments upon convictions on multiple counts at a single trial is a problem controlled largely by the Double Jeopardy Clause of the Fifth Amendment." *Id.* at 533, 382 N.E.2d at 894. Applying *Blockburger,* the Court found that the convictions were proper because they were not based on the same offense.

*Elmore* noted that earlier Indiana authorities had developed a "same evidence" [14] test "to secure the rights found in

14. This is not the same test advanced by the majority. It turned on the evidence presented at trial, not the evidence used by the trier of fact to convict.

the double jeopardy provision of the state constitution"[15] and observed that this Court's previous holdings on multiple punishments were often consistent with federal double jeopardy even if they did not seem to derive from it. *Id.* at 536, 382 N.E.2d at 896. Because Fifth Amendment double jeopardy had been held applicable to state criminal proceedings in *Benton*, *Elmore* concluded that "[n]ow that we are bound by the federal Double Jeopardy Clause, it more necessary than ever that we be in line with federal standards." 269 Ind. at 537, 382 N.E.2d at 896.

Insofar as *Elmore* has any implication for the state constitution, it turns on the proposition that because the federal Double Jeopardy Clause applies to the states, the state doctrine (whether common law or constitutional) should be conformed to federal constitutional law. This is contrary to current state constitutional law in Indiana and other states. To be sure, we have often adopted federal constitutional rules in interpreting their state counterpart. *See, e.g., Ajabu,* 693 N.E.2d at 927 (adopting the rule of *Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986), as to self incrimination). But we frequently find Indiana judicial precedent, history or other factors to dictate a different result under the state provision, even where the federal and state constitutions are textually similar or even identical. *See, e.g.,*

*Brown v. State,* 653 N.E.2d 77 (Ind.1995) (unreasonable search or seizure); *Collins v. Day,* 644 N.E.2d 72 (Ind.1994) (equal privileges and immunities); *Price v. State,* 622 N.E.2d 954 (1993) (free speech). Indeed, all of the opinions in this case tread this independent path.

The first significant[16] post-*Elmore* authority to refer expressly to Article I, § 14 of the Indiana Constitution appears to be *Bevill,* 472 N.E.2d at 1247, which cited *Thompson* as the Indiana authority, paired with *Pearce,* in referring to "the prohibitions of the Indiana Constitution, Article I, § 14 and the Fifth Amendment of the United States Constitution against multiple punishments for the same offense." *Id.* at 1253. It is of course correct that *Pearce* stated that doctrine as to the Fifth Amendment. But *Thompson,* which dealt with convictions in the same trial for possessing and dealing the same drugs, held unequivocally that double jeopardy had nothing to do with multiple punishment. Only after *Bevill* was decided in 1985, do we find cases referring to double jeopardy and citing state and federal constitutions in dealing with multiple punishments. And in every instance, as *Games* noted, there is no suggestion that there is any difference between the two constitutions.

From this line of cases, I take it that notwithstanding the somewhat suspect[17]

---

**15.** *Elmore* cited only *Durke v. State,* 204 Ind. 370, 183 N.E. 97 (1932) for this proposition. *See Elmore,* 269 Ind. at 536, 382 N.E.2d at 896. *Durke* was a subsequent prosecution case in which this Court found no bar to a second prosecution because it was based on a distinct offense. *Durke,* 204 Ind. at 377, 183 N.E. at 100. *Elmore* incorrectly described this case as one dealing with both "reprosecution and multiple punishment" issues. 269 Ind. at 536, 382 N.E.2d at 896.

**16.** The Court in *Dragon v. State,* 270 Ind. 223, 383 N.E.2d 1046 (1979), recited the defendant's claim that his convictions for rape and kidnaping violated Article I, § 14, but did not purport to rule on the state issue except to the extent that a state ruling is implied by following *Elmore* and applying *Blockburger* to uphold the convictions.

**17.** One commentator referred to the oft repeated above quote from *Pearce* as the Supreme Court's "favorite saying." Dressler, *supra,* § 199[C]. It is interesting that the authority for the multiple punishment proposition is *In Parte Lange,* 18 Wall. 163, 85 U.S. 163, 21 L.Ed. 872 (1873), where Lange was convicted of a crime carrying a sentence of one year *or* a fine of $200, but was sentenced to both a fine of $200 and one year in prison. After the fine was paid, the error was discovered and the trial court resentenced Lange to the prison term. The Supreme Court held that resentencing impermissible. This sequential punishment issue bears little relation to the multiple punishments of today which, as explained *infra,* really entail nothing more than a review of the legislative intent to provide cumulative penalties. *See, e.g., United States v. Rutledge,* 517 U.S. 292, 116 S.Ct.

announcement in *Pearce* that the federal Double Jeopardy Clause bars multiple punishments, there is no such holding in Indiana except to the extent that a number of cases in the last two decades, bound by federal constitutional doctrine as it existed before the U.S. Supreme Court decision in *U.S. v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), sometimes recited this federal rule, usually citing *Pearce.* Although these more recent cases purported to resolve claims under both the state and federal constitutions, they did so without any discussion as to how or where or why this newfound state rule arose. In no case was anyone contending that there was a difference between the two constitutions. Because federal constitutional law is binding on this Court, these cases' reference to the state constitution was pure dicta. These cases, of which *Bevill* is an example, appropriately cited *Pearce* for the proposition that multiple punishments implicate federal double jeopardy protection. But to the extent they cited any authority, for example *Thompson,* for the same proposition under the Indiana Constitution, they did so inaccurately, and contrary to the express holding of *Thompson.*

The sum of this is that, although there is a great deal of dicta on the point, no case from this Court has considered whether the Indiana Constitution raises a bar higher than or different from the Fifth Amendment. And as far as I can see, in no case until *Games* conformed Indiana's understanding of federal double jeopardy to *Dixon,* did the Court note any potential for difference.

### B. *Non–Constitutional Doctrines Dealing with Multiple Punishments*

I do not mean to suggest that the Indiana cases finding bars to multiple punishment were incorrectly decided in their results. As Justice Sullivan's opinion

shows, these cases have in recent years been cited for a number of propositions barring multiple punishment for the same act. However, I believe the decisions that have found Indiana's constitutional provision, or its counterparts in other constitutions, to prohibit multiple punishments have in many, if not most, cases unnecessarily invoked constitutional artillery where a statutory or common law rifle would do the job.

As noted, *Kokenes* held that a lesser included offense cannot result in a conviction in addition to the greater offense, but did so solely as a matter of common law. We also have case law making clear that a conspiracy conviction cannot stand if the overt act is the crime that is the object of the agreement, that a single element cannot enhance two offenses and that the same act and consequences cannot support multiple convictions. Multiple convictions in these cases are barred by the rule established in *Thompson* that "before the court may enter judgment and impose sentence upon multiple counts, the facts giving rise to the various offenses must be independently supportable, separate and distinct." 259 Ind. at 592, 290 N.E.2d at 727. *See also Candler,* 266 Ind. at 440, 363 N.E.2d at 1233 (same); *Williams,* 266 Ind. at 668, 366 N.E.2d at 642 (same); *Franks v. State,* 262 Ind. 649, 323 N.E.2d 221 (1975) (convictions and sentences for both felony murder and premeditated murder were error where there was only one killing). Although the *Elmore* decision disapproved the *Thompson* rule that facts giving rise to various offenses must be "independently supportable, separate and distinct" as the appropriate standard for Fifth Amendment multiple punishment challenges, I conclude that it is nonetheless a viable doctrine under Indiana common law, as *Bevill* demonstrated, even if *Bevill* incorrectly attributed it to the Constitution.

1241, 134 L.Ed.2d 419 (1996); *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74

L.Ed.2d 535 (1983).

These common law doctrines are supported by the well-settled rule that legislative reenactment after a statute has been construed by the courts will imply that the statute "was adopted with the interpretation and construction which said courts had enumerated." *McIntyre v. State,* 170 Ind. 163, 164, 83 N.E. 1005, 1006 (1908). Whether or not the more recent cases announcing these rules were correct in claiming that they are derived in part from the federal constitution or Article I, § 14 of the Indiana Constitution, there can be no doubt that these rules have been applied repeatedly over the years. Accordingly, we may assume the legislature intended the criminal laws to be interpreted in concert with these doctrines. This point is particularly powerful in light of the adoption of the 1976 criminal code on the heels of the then recent decisions in *Thompson* and *Candler.*

We also have in Indiana statutory prohibitions based on the Model Penal Code that prohibit convictions for (1) conspiracy and attempt to commit the same crime; and (2) an attempt and the crime attempted. IND.CODE § 35–41–5–3 (1998). As noted in Part II, we have a statutory prohibition against sentencing a person for both a crime and an "included offense" in the same case. *Id.* § 35–38–1–6.

These provisions were taken in 1976 from the Model Penal Code and have counterparts in the then proposed but never adopted Federal Criminal Code. The Indiana Criminal Law Study Commission "assumed" that the state and federal constitutional provisions were coextensive. CRIMINAL LAW STUDY COMMISSION, INDIANA PENAL CODE PROPOSED FINAL DRAFT 51 (1974). This assumption was made at the time *Blockburger* was under severe attack,[18] and long before the federal constitutional doctrine moved first to *Grady,*

then through *Dixon* back to an entrenched and refortified *Blockburger* analysis. At the time this assumption was expressed, there was, as far as I can see, no explicit contention or suggestion that the state constitutional provision might have a different content from the Fifth Amendment, as *Games* suggests. Certainly *Thompson* expressed a different view of both constitutions as of 1972. In any event, even if the Commission's assumption was correct, it does not amount to a commitment of Indiana state law to unknown future federal doctrinal developments. Rather, at best it is a recognition that double jeopardy law as it was understood in 1976 is reflected in some or all of these statutory provisions. However, as already noted, at least some of these rules are derived from common law doctrines that predated both state and federal constitutions and to some extent go beyond the requirements of either constitution. They are nonetheless well understood and generally workable principles that require no constitutional footing.

The problem of multiple punishments can thus be handled as a matter of common law doctrines or statutory construction, guided either by explicit direction from the legislature, as the cited statutes provide, or by commonly cited rules of statutory construction and presumed legislative intent.

C. *Finding Constitutional Basis for Multiple Punishment Doctrines Accomplishes Little*

Finding a constitutional dimension in multiple punishment cases under double jeopardy doctrine does not add to the protection already afforded under other provisions of the state and federal constitutions. As Justice Souter put it in his separate concurring and dissenting opinion in *Dix-*

18. It seems beyond argument that the appropriate sentence and the number of years for which a man shall be punished for an offense is not rationally a function of the number of statutory violations into which his conduct may be parsed by a clever pleader. The

Draft, therefore, is careful not to use the *Blockburger* approach and to this extent changes existing Federal law.

WORKING PAPERS OF THE NATIONAL COMMISSION ON REFORM OF FEDERAL CRIMINAL LAWS 341 (1970).

*on,* the multiple punishment branch of double jeopardy law is designed to ensure that the accused "is not receiving for one offense more than the punishment authorized." 509 U.S. at 744, 113 S.Ct. 2849, 125 L.Ed.2d 556. To achieve this, however, we need no further constitutional basis than the Due Process Clause of the Fourteenth Amendment and the due course of law provision of our Indiana Constitution. A sentence in excess of that authorized by law violates these provisions and more. It is not merely an unconstitutional ex post facto increase of sentence; it is an imposition of a penalty never authorized at all. As such, it is plainly invalid. Thus resort to double jeopardy is wholly unnecessary to invalidate a sentence outside the penalties provided by statute. The issue is simply whether the statute does or does not authorize the punishment.

To make the same point another way, it trivializes the Double Jeopardy Clause to equate it, as federal doctrine does, with legislative intent.[19] For example, our courts have held that one serious bodily injury cannot elevate both robbery and battery to Class A felonies. *Odom v. State,* 647 N.E.2d 377 (Ind.Ct.App.1995). However, the legislature could create a new class of "AA" felonies that consist of "inflicting serious bodily injury by battery in the course of a robbery" with penalties equal to the sum of present sentences for two Class A felonies. As the Supreme Court noted sixty years ago, "[t]here is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a transaction which it has the power to pro-

hibit and punishing also the completed transaction." *Albrecht v. United States,* 273 U.S. 1, 47 S.Ct. 250, 71 L.Ed. 505 (1927). The Indiana Court of Appeals similarly observed,

> there was nothing to prevent the Legislature from enacting a statute making each step leading up to the sale of intoxicating liquor as a beverage unlawful, and, in doing so, it made the possession of intoxicating liquor and the maintenance of a place for persons to congregate for the purpose of drinking separate offenses.

*Thompson v. State,* 89 Ind.App. 555, 559, 167 N.E. 345, 346 (1929). One can imagine a calibrated criminal code with finely graduated sentences for each aggravating element that would produce in net result the same sentence as multiple punishments for various combinations of crimes under existing law. The General Assembly has wisely chosen not to complicate matters with such an intricate criminal code, but if it did so, there would be no double jeopardy bar.[20] If all the legislature must do to impose higher penalties is properly identify one combined offense where two were formerly spelled out, the Double Jeopardy Clause presents no check on legislative "piling on." Similarly, if one objective of the Double Jeopardy Clause is or ought to be restriction of prosecutorial discretion, the omnibus crime does restrict that discretion, if viewed as the alternative to the list of component crimes under current law. But the legislature is also free to create a series of ascendingly complex crimes, each a lesser included of those above it. Under such a regime, prosecuto-

---

**19.** "[T]he role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). "The test articulated in *Blockburger* serves a generally similar function of identifying congressional intent to impose separate sanctions for multiple offenses arising in the course of a single act or transaction." *Iannelli v. U.S.,* 420 U.S. 770, 785, n. 17, 95 S.Ct. 1284, 43 L.Ed.2d 616

(1975) (citation omitted). "[D]ouble jeopardy protection against cumulative punishments is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature." *Ohio v. Johnson,* 467 U.S. 493, 499, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984).

**20.** For the view that the complex crime is different from the collection of its component crimes, see the Comment cited in footnote 1.

rial discretion to select the crime to be charged from this smorgasbord is unbounded, just as multiple counts give the prosecutor major bargaining power today. Ultimately the decision rests with the legislature to vest or not vest wider prosecutorial discretion to charge crimes with greater or lesser penalties. This remains true whatever view one has of the Double Jeopardy Clause.

### D. Other Constitutional Provisions Deal with Excessive Punishment

The conclusion that double jeopardy under Article I, § 14 is not implicated by multiple punishments in the same trial is fortified by the fact that, unlike the federal constitution, the Indiana Constitution includes other provisions that restrict the ability of a prosecutor or a court to "pile on" by finding multiple statutory violations in a single action. First, Article I, § 16 imposes a requirement that penalties be "proportioned to the nature of the offense." Although courts defer substantially to legislative judgment in setting the penalties for defined crimes, the legislature is not free from restraint under this provision. *See, e.g., Conner v. State,* 626 N.E.2d 803 (Ind.1993). Second, the appellate courts of this state are authorized under Article VII, §§ 4 and 6 to "review and revise" sentences, and on occasion do so based on a judgment that the punishment is excessive in relation to the crime or the nature of the offense and the character of the offender. *See* Ind. Appellate Rule 17(B).[21]

### E. The Problem in Trying to Juggle Two Strands of Double Jeopardy

The mischief that arises from confounding the two branches into one doctrine of double jeopardy is that it restricts the application of the provision in the subsequent prosecution arena where it is most needed. In my view we have ended up with the wrong rule for subsequent prosecutions in order to avoid undesired results on the multiple punishment front. The same phenomenon has occurred in federal double jeopardy jurisprudence. As Justice White put it in his separate concurring and dissenting opinion in *Dixon:*

> To focus on the statutory elements of a crime makes sense where cumulative punishment is at stake, for there the aim is simply to uncover legislative intent.... But ... adherence to legislative will has very little to do with the important interests advanced by double jeopardy safeguards against successive prosecutions. The central purpose of the Double Jeopardy Clause being to protect against vexatious multiple prosecutions, these interests go well beyond the prevention of unauthorized punishment.

509 U.S. at 735, 113 S.Ct. 2849, 125 L.Ed.2d 556 (emphasis and citations omitted).

The problem of mixing multiple punishment and subsequent prosecution is highlighted by a single act that violates multiple statutes or, in violating a single statute, injures multiple victims. Under current law, everyone seems to agree that it must be possible to charge a person who kills two people with two murders. The term "same offense" cannot refer simply to the same statutory crime, or it would be unconstitutional to prosecute the same person for two murders committed at different times and places. But in order to reach the conclusion that we have two different crimes, we must look at the facts of the two crimes, and not only the statutes they offend. On the other hand, if the "offense" is solely the actions of the accused, it would be impossible to impose a greater punishment for murdering two vic-

---

**21.** *See, e.g., Gregory v. State,* 644 N.E.2d 543 (Ind.1994) (Shepard, C.J.); *Beatty v. State,* 567 N.E.2d 1134 (Ind.1991) (Dickson, J.); *Mayberry v. State,* 670 N.E.2d 1262 (Ind.1996) (Sullivan, J.); *Archer v. State,* 689 N.E.2d 678 (Ind.1997) (Selby, J.); *Weeks v. State,* 697 N.E.2d 28 (Ind.1998) (Boehm, J.).

tims by the same act, for example burning down a house and killing two inhabitants.[22]

Take Timothy McVeigh, who by a single act murdered 168 victims in the federal building in Oklahoma City in 1995. If that occurred in this state could prosecutors charge and try McVeigh 168 times, notwithstanding multiple acquittals, until they obtain a conviction because the actual evidence of the death of a victim would be different in each case? We must also consider the possibility of a conviction in one of the earlier trials, but on a lesser included offense or resulting in a lesser sentence than the death penalty. Can the prosecution keep pursuing McVeigh until it obtains the death penalty even after multiple trials do not produce that result? I cite the McVeigh hypothetical to dramatize the point. However, the same issue arises in more commonplace scenarios with multiple victims. Should a driver accused of reckless homicide by running a red light face four separate prosecutions because there were three passengers and a driver in the car the driver hit? The actual evidence test would presumably permit all of these reprosecutions because the element of the crime—a victim—could be supplied by different evidence in each case.

Collateral estoppel as a nonconstitutional doctrine can bar some reprosecutions. However, I do not think persistent prosecution of the same act should be a constitutional result, and, as *Griffin v. State*, 717 N.E.2d 73 (Ind.1999), also decided today, demonstrates, collateral estoppel imposes only minimal restrictions on reprosecution. Because collateral estoppel is derived principally from civil litigation and is grounded in doctrines of judicial economy and fairness, its rules do not take into consideration the important concerns that underlie both Article I, Section 14 and the Fifth Amendment.[23] These include the onerous toll that is exacted by even a successful defense and a historically deep rooted apprehension that the king should not be permitted to pursue a citizen repeatedly.

This is substantially the same problem that was presented in *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), where a substantial majority of the United States Supreme Court held that collateral estoppel is constitutionally grounded in the Fifth Amendment Double Jeopardy Clause. In *Ashe*, the Fifth Amendment was held to bar repeated prosecutions based on different victims whom the defendant allegedly robbed at

**22.** Earlier double jeopardy law held two convictions barred. *Ladner v. United States*, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958) (single discharge from shotgun that injured two federal officers supports only one count of assault with a deadly weapon). This is not the law today. *See Kelly v. State*, 527 N.E.2d 1148 (Ind.Ct.App.1988), *summ. aff'd.* 539 N.E.2d 25 (Ind.1989) (where several deaths or injuries occur in the course of a single incident the offense has been committed several times); *see also*, 4 JOSEPH G. COOK, CONSTITUTIONAL RIGHTS OF THE ACCUSED § 29.40 n. 7 (3d ed. 1996) (collecting cases sustaining convictions on multiple charges for single act).

**23.** Perhaps collateral estoppel would come to McVeigh's aid, but it is a slender reed indeed because it requires in general that the facts McVeigh asserts as requiring dismissal of a subsequent indictment necessarily be a basis for the earlier acquittal or conviction. *See Townsend v. State*, 632 N.E.2d 727, 731 (Ind. 1994). The difficulty of making this showing

causes many claims to fail. *See* DRESSLER, *supra*, § 207[B] ("The collateral estoppel doctrine is of limited practical value to criminal defendants."). Indeed, particularly if the first result is an acquittal, the basis of the jury's ruling is often unascertainable. Appellate review is no panacea because settled federal double jeopardy law precludes appellate review of acquittals, *see, e.g., Martin Linen*, 430 U.S. at 564, 97 S.Ct. 1349, 51 L.Ed.2d 642, and, at least in Indiana, an acquittal cannot be illuminated by special verdicts and interrogatories. *See* Ind. Trial Rule 49; Ind.Crim. Rule 21. As the United States Supreme Court recently observed in a different context, "it is impossible to know exactly why a jury found a defendant not guilty on a certain charge." *United States v. Watts*, 519 U.S. 148, 155, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) (per curiam) (holding that an acquittal does not preclude federal district courts, when imposing sentences, from considering conduct underlying the acquitted charge).

the same poker game. *Id.* at 447, 90 S.Ct. 1189, 25 L.Ed.2d 469. It seems to me that *Dixon*, by retreating to *Blockburger* and rejecting any difference between multiple punishments and subsequent prosecutions, also implicitly rejects *Ashe* as a matter of federal constitutional law. 509 U.S. at 704–05, 113 S.Ct. 2849, 125 L.Ed.2d 556.

Indiana cases decided after *Ashe* but before *Dixon* applied *Ashe* to find a bar to the use of evidence of facts "necessarily decided" in a prior trial. *See, e.g., Kuchel v. State*, 570 N.E.2d 910, 916 (Ind.1991) (citing *Little v. State*, 501 N.E.2d 412, 415 (Ind.1986)). A few speak of barring "the reintroduction or relitigation of facts already established" in the first trial. *See, e.g., Boles v. State*, 595 N.E.2d 272, 274 (Ind.Ct.App.1992). These Indiana authorities find collateral estoppel notions to be constitutionally based, as *Ashe* clearly implied. But these cases deal, at least explicitly, only with the federal constitution and do not mention the Indiana Double Jeopardy Clause. Unless they are also found to be grounded in the state constitution, *Dixon* seems to leave these notions without constitutional footing.

The *Ashe* result, as followed in *Kuchel, Little* and other Indiana cases, is essentially the double jeopardy doctrine that I believe should be followed under the state constitution. For subsequent prosecutions, I would follow the "same conduct" analysis that was adopted in *Grady*, 495 U.S. at 508, 110 S.Ct. 2084, 109 L.Ed.2d 548, for federal double jeopardy law in the subsequent prosecution context. This is in most cases more or less the same thing as the "same facts" from earlier Indiana cases. The "same conduct" test is sup-

ported by at least some Indiana authority. For example, *Clem v. State*, 42 Ind. 420 (1873), which is no more "isolated" than several other opinions in the erratic history of double jeopardy in this State described in the majority's opinion. *Cf.* 717 N.E.2d at 45, 48 (citing the following cases employing analysis of both statutory elements and the conduct of the defendant: *Wininger v. State*, 13 Ind. 540, 541 (1859)) ("[t]he question would be, is the one act included in the other?"); *Durke*, 204 Ind. at 370, 183 N.E. at 97 (describing the "identity of the offense" test as whether the second charge was for the "identical act" as the first).[24] It is also the test embraced by *Thompson* although applying only common law prohibitions against multiple punishment. 259 Ind. at 592, 290 N.E.2d at 727 ("facts giving rise to the various offenses must be independently supportable, separate and distinct").

*Grady* held that mere comparison of the statutory elements was insufficient for subsequent prosecutions. Double jeopardy, in addition to requiring a comparison of the statutes, proscribed "any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." 495 U.S. at 521, 110 S.Ct. 2084, 109 L.Ed.2d 548 (footnote omitted). *Grady* survived for only three years, however, and was rejected by *Dixon* in favor of an apparent return to the "same elements" test of *Blockburger*. *See Dixon*, 509 U.S. at 712, 113 S.Ct. 2849, 125 L.Ed.2d 556. Among the reasons offered by Justice Scalia, writing for a five-justice

---

**24.** The majority points to *Elder*, 65 Ind. at 282, which rejected what it called a "same set of facts test" and seems to permit a subsequent prosecution for essentially the same act where it injured two victims. I agree that this case, although not a constitutional case, is contrary to the result I urge. It interestingly is the single state court case cited in *Ashe* as an example along with some federal cases of the doctrine *Ashe* rejects. *Ashe*, 397 U.S. at 452, 90 S.Ct. 1189, 25 L.Ed.2d 469 (Bren-

nan, J., concurring). I find *Elder* to be something of a derelict on the waters of our state law. It makes no mention of *Clem*, 42 Ind. 420, decided six years earlier, and could have been decided on its facts with less sweeping language given that the defendant apparently made two distinct attempts to cause the abortion and only the first was charged in the first indictment. None of the other cases seems to claim to permit a subsequent prosecution based on the same actions.

majority in overruling *Grady*, was an asserted need for doctrinal consistency between the multiple punishment and subsequent prosecution lines. If a different methodology applied to subsequent prosecutions, the phrase "same offense" would have more than one meaning depending on the context. *Id.* at 704, 113 S.Ct. 2849, 125 L.Ed.2d 556.

I agree that it seems anomalous to find two different standards in the same constitutional provision depending on the context. Rather than attempt to reconcile the two under the Indiana Constitution, I would resolve multiple punishment issues by reference to the common law and statutes and remain with the *Grady* "same conduct" test for subsequent prosecutions. Indeed, as already noted, Justice Scalia in *Kurth Ranch*, just one year after *Dixon*,

seemed to agree that only subsequent prosecutions trigger double jeopardy concerns. 511 U.S. at 798, 114 S.Ct. 1937, 128 L.Ed.2d 767. Although *Grady* is no longer the law under the federal Double Jeopardy Clause, I generally agree with the views of Justices Souter, Stevens, White, and Blackmun, who defended *Grady* in *Dixon*. *See id.* at 743–763, 113 S.Ct. 2849, 125 L.Ed.2d 556 (opinion of Souter, J., concurring in the judgment in part and dissenting in part).[25] Some analysis beyond the raw statutory elements will always be required in the subsequent prosecution context. Indeed *Dixon* itself seems to confirm this.[26]

In sum, I believe the answer to the constitutional claims raised here is not adoption of a uniform test in the name of doctrinal consistency. Rather it is to rec-

**25.** Most recently, in *Hudson v. United States*, 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997), Justice Souter in a concurring opinion endorsed *Blockburger* as the test for permitting a subsequent prosecution under a different statute requiring proof of different facts from the first proceeding. *Id.* The genealogy of *Blockburger* may explain some of the blurring of the important differences between subsequent prosecutions and multiple punishments. *Blockburger* itself sustained convictions on separate counts based on the same act (a sale of narcotics) because the two statutes (sale of the drug outside of its original package and sale of the drug without a proper request from the purchaser) required proof of different elements. *Blockburger* cited *Gavieres v. United States*, 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489 (1911) and *Albrecht*, 273 U.S. at 1, 47 S.Ct. 250, 71 L.Ed. 505, for this proposition. *Gavieres* permitted a subsequent prosecution for the same act based on a different statute. It, however, relied on a Massachusetts case cited with approval in *Carter v. McClaughry*, 183 U.S. 365, 22 S.Ct. 181, 46 L.Ed. 236 (1902). *Gavieres*, 220 U.S. at 343, 31 S.Ct. 421, 55 L.Ed. 489. *Carter*, in turn, involved a multiple-count indictment in the same proceeding. Similarly, *Albrecht* upheld convictions for selling and possessing the same liquor. 273 U.S. at 11, 47 S.Ct. 250, 71 L.Ed. 505. This line of cases, with the exception of *Gavieres*, deals with multiple-count indictments, not subsequent prosecutions, and *Gavieres* relies on multiple punishment cases for its, in my view, incorrect holding.

The Supreme Court of the United States in *Dixon* resolved this issue under the federal constitution, at least for now, with a return to *Blockburger*, but I see no impediment to our state charting its own course on this point.

**26.** The need to take some stock of the underlying facts when dealing with subsequent prosecutions is illustrated by *Dixon* itself, notwithstanding the demise of *Grady*. In writing for the five-member majority that overruled *Grady*, Justice Scalia emphasized that the federal double jeopardy inquiry traditionally focuses on the *Blockburger* test. *Dixon*, 509 U.S. at 703–12, 113 S.Ct. 2849, 125 L.Ed.2d 556. But when addressing the case at hand, Justice Scalia looked beyond the statutes and considered the facts in finding a double jeopardy violation—an approach that splintered the five-member block that agreed to do away with *Grady*. *See id.* at 697–703, 113 S.Ct. 2849, 125 L.Ed.2d 556 (opinion of Scalia, J., joined by Kennedy, J.). Chief Justice Rehnquist wrote separately on this point and noted the irony (if not internal inconsistency) of Justice Scalia's analysis: "By focusing on the facts needed to show a violation of the specific court orders involved in this case, and not on the generic elements of the crime ... Justice Scalia's double jeopardy analysis bears a striking resemblance to that found in Grady—not what one would expect in an opinion that overrules Grady." *Id.* at 717, 113 S.Ct. 2849, 125 L.Ed.2d 556 (opinion of Rehnquist, C.J., joined by O'Connor, J., and Thomas, J.).

ognize that punishment arising out of a single trial does not present a double jeopardy issue. Indeed, as noted earlier, the concern in Indiana cases going back to the rules announced in *Elder* and quoted in *Kokenes* is clearly whether a second prosecution may be pursued, not whether two crimes may be charged and convictions result in the same proceeding.[27]

As a final note, I do not believe the subsequent prosecution issue can be adequately handled by other constitutional provisions. The Due Process Clause of the federal constitution has also been suggested as a bar to subsequent prosecutions for the same act. *See* Akhil Reed Amar, *Double Jeopardy Law Made Simple*, 106 Yale L.J. 1807 (1997). Although at some point repetitive prosecution may run afoul of the Due Process Clause, at least under current precedent, subsequent prosecutions for essentially the same action have been permitted to go forward without mention of due process as *Elder* and other cases cited in *Ashe* demonstrate. Moreover, due process gives little guidance to when enough is enough. Rather, invoked as a bar to subsequent prosecution, it seems akin to Justice Stewart's famous test for obscenity: we must know it when we see it. *See Jacobellis v. Ohio*, 378 U.S. 184, 197, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964) (Stewart, J., concurring). Because we have a specific constitutional provision

addressing precisely this issue, I would apply it according to its terms and forego reliance on judicially fashioned remedies under the much more general Due Process Clause.

## II. Resolution of this Case Under Indiana Statutes and Common Law

I believe Richardson correctly complains of his dual conviction, but not on constitutional grounds. As Justice Sullivan observes, we have held that "conviction and punishment for a crime that is a lesser included offense of another crime for which the defendant has been convicted and punished" is prohibited.[28] 717 N.E.2d at 55 (Sullivan, J., concurring). We also have a statute that prohibits conviction for an included offense. *See* Ind.Code § 35–38–1–6 (1998); *see also* Ind.Code § 35–41–1–16 (1998) (defining "included offense"). Because we typically do not resort to a constitutional resolution where a statutory one will do, I would decide this case under the statute. *See Bayh v. Sonnenburg*, 573 N.E.2d 398, 402 (Ind.1991) (it is "the duty of the court not to enter upon the consideration of a constitutional questions where the court can perceive another ground upon which it may properly rest its decision") (citing *Bureau of Motor Vehicles v. Scott*, 497 N.E.2d 557, 559 (Ind.1986)).

As a preliminary matter, we must be clear about the nature of the inquiry. In

27. *Elder* offered the following rules to determine whether subsequent provisions were permitted.

 1. When the facts constitute but one offense, though it may be susceptible of division into parts, as in larceny for stealing several articles of property at the same time, belonging to the same person, a prosecution to final judgment for stealing a part of the articles will be a bar to a subsequent prosecution for stealing any other part of the articles, stolen by the same act.

 2. When the facts constitute two or more offenses, wherein the lesser offense is necessarily involved in the greater—as an assault is involved in an assault and battery, as an assault and battery is involved in an assault and battery with intent to commit a felony, and as a larceny is involved in a

robbery—and when the facts necessary to convict on a second prosecution would necessarily have convicted on the first, then the first prosecution to a final judgment will be a bar to the second.

 3. But when the same facts constitute two or more offenses, wherein the lesser offense is not necessarily involved in the greater, and when the facts necessary to convict on a second prosecution would not necessarily have convicted on the first, then the first prosecution will not be a bar to the second, although the offenses were both committed at the same time and by the same act. 65 Ind. at 285.

28. *See, e.g., Bivins v. State*, 642 N.E.2d 928, 949 (Ind.1994); *Wethington v. State*, 560 N.E.2d 496, 506 (Ind.1990).

evaluating a claim that the statute does not permit convictions for both battery and robbery, we need to look at whether the included offense "is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged." *See* IND.CODE § 35–41–1–16(1) (1998). This necessarily involves more than an examination of the statutory elements and requires inspection of both the evidence produced at trial and the charging instrument. To be sure, the definition of "included offense" in Indiana Code § 35–41–1–16(1) looks to the "elements" of the offense, unlike § 35–34–1–2(d), which requires a charging instrument to identify the "facts" of the offense. However, the definition also specifically states that the court must look to the "proof" of the elements, necessarily requiring a look at both the charging instrument and the evidence at trial. The conclusion, it seems to me, is that an "offense" under both sections embraces the statutory prohibition, the charging instrument and the acts of the accused that violate the statute.

This conclusion seems inescapable when one considers the implications of a contrary view. Surely one robbery is not the same "offense" as another robbery of a different victim on another day merely because the same statute is breached. The example of a felony murder based on a killing incident to a robbery also illustrates this point. A defendant charged with a felony murder cannot be convicted of both the felony murder and the underlying felony. Many cases so hold. *See, e.g., Swafford v. State,* 498 N.E.2d 1188, 1191–92 (Ind.1986). But in order to reach that conclusion one needs to do more than examine the statutes. The felony murder statute does not identify a robbery as the

only underlying felony. The statute can be triggered by any of several felonies (arson, robbery, rape, etc.). IND.CODE § 35–42–1–1(2) & (3) (1998). And even if robbery were the only felony in the list, one would still need to examine the charging instrument or the evidence to know whether the robbery supporting the felony murder is the same robbery resulting in the robbery conviction.

The resolution of Richardson's case is controlled by the lesser included offense statute. Richardson was charged with a battery "that resulted in bodily injury in that the defendant beat a certain Jeffrey W. Koenig with his fist to the extent that [Koenig] suffered bodily injury." He can be convicted in this proceeding only of that battery, not just any old battery at some other time or place. Evidence at trial demonstrated that the use of force in the robbery was Richardson's beating Koenig with his fist. As a result, we know that the battery constituting the force in the robbery is the same as the battery of which Richardson was convicted, and not the tossing of Koenig off the bridge.[29] The fact that the evidence at trial supported this other uncharged battery does not permit the jury to convict on that uncharged battery, or any other crime, for that matter, that was not charged. *Hobson v. State,* 675 N.E.2d 1090, 1095 n. 2 (Ind. 1996) ("A defendant may not be found guilty of a crime that is not charged against him, and if so convicted, the verdict is contrary to law."). Accordingly, the battery constituting an element of the robbery cannot also support an independent conviction for battery because it is established by "less than all the material elements required to establish the commission" of the elevated robbery.

---

**29.** The majority states that there was no actual evidence of resulting bodily injury from pushing Koenig off the bridge. Because "bodily injury" includes physical pain, IND. CODE § 35–41–1–4 (1998), I conclude that there was evidence to support a second battery. Tossing someone off a bridge would certainly pass muster as a battery causing bodily injury if this were a challenge based on the sufficiency of the evidence. Nonetheless, we know that Richardson cannot be convicted of the battery involved in pushing Koenig off the bridge because he was charged with battery by beating Koenig with his fist.

I conclude, consistent with the discussion above, that the definition of included offense under Indiana Code § 35–41–1–16(1) necessarily involves a look at the charging instrument and the proof at trial. When we do that, we see that Richardson's convictions for both robbery and battery are not permitted under the Indiana Code, irrespective of constitutional double jeopardy considerations. The dual convictions also fall under the rule, often invoked without reference to the statute, that one crime cannot both enhance another and also support a separate conviction. *See, e.g., Kingery v. State*, 659 N.E.2d 490, 495–496 (Ind. 1995).

SELBY, J., concurs.